## Selden's Appeal.

1. Land of Mrs. Perkins, her husband living, was subject to a first mortgage to Metcalf, and a second to Selden. She contracted to sell part : to make title it was agreed between all the parties that the land should be sold under Metcalf's mortgage, purchased by him, he convey to the vendee, receive that purchase-money, and convey the remainder to Mrs. Perkins, the balance of his mortgage to be secured on the remainder and the Selden mortgage to come in next after that. After the sale to Metcalf and before he conveyed to Mrs. Perkins, she and her husband made a mortgage to him, then one to Brecht, both which were recorded ; and then executed the Selden mortgage which was not acknowledged by Mrs. Perkins : the Metcalf mortgage was assigned to Brecht. Afterwards Metcalf conveyed to Mrs. Perkins : the Metcalf and the Brecht mortgage were recorded a second time and the other mortgages were recorded after them on the same day. The land having been sold under the first mortgage : *Held,* that Brecht nor Selden had any lien on the fund arising from the sale.

2. Mrs. Perkins had no legal title under the agreement, but an equitable right grounded upon the agreement at the sheriff's sale to reinstate the mortgages on her part of the land according to their respective priorities.

3. A chancellor would not order Metcalf to convey to her without requiring her to carry out the agreement.

4. The second recording of the Brecht mortgage after delivering the deed to Mrs. Perkins did not cure her want of title when she executed it.

5. In the distribution of the fund, Selden in equity was entitled to priority over Brecht on his individual mortgage.

October 24th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ.

Appeal from the Court of Common Pleas of *Erie county :* Of October and November Term 1873, No. 6.

In the distribution of the proceeds of the sheriff's sale of the real estate of Mary Ann L. Perkins, wife of Rufus L. Perkins.

The money being brought into court, A. J. Foster, Esq., was appointed auditor to report distribution. The facts in the case as found by him, are as follows :—

Mrs. Perkins was the owner of a farm on which there was an old purchase-money mortgage, owned by Prescott Metcalf. Her husband was a partner in the firm of Perkins & Selden, composed of himself and Samuel Selden ; this firm was indebted to the firm of George Selden & Son, composed of George and Joseph Selden. To secure the debt, Mr. and Mrs. Perkins executed a mortgage on her farm to Selden & Son ; Joseph Selden having died, this mortgage was assigned to James Sill, Esq., his administrator. John C. Selden afterwards became the trustee of the heirs of Joseph Selden, the decedent.

The purchase-money mortgage being the first lien, and the Selden mortgage the second on Mrs. Perkins's farm, she and her husband contracted for the sale of part of it to F. P. Bailey ; but as a clear title could not be made without a release of the Metcalf mortgage, and Metcalf being unwilling to release, it was agreed between Joseph C. Selden the trustee, James Sill the administrator, Rufus Perkins and Metcalf, that the whole should be sold by the sheriff

under the purchase-money mortgage, Metcalf bid it in at a nominal sum; then make a deed to Bailey for the part he had contracted for; Metcalf to receive Bailey's purchase-money and apply it to Metcalf's purchase-money mortgage; and to convey the remainder of the farm to Mrs. Perkins, and she with her husband to execute a mortgage to Metcalf on the part conveyed to her, to secure whatever might still be due on the purchase-money mortgage. Another mortgage was to be executed to Joseph C. Selden, trustee of the heirs of Joseph Selden, deceased, for the amount due on the mortgage held for them, "so that the relative position of the two prior mortgages should not be altered."

Under this understanding the farm was sold at November Term 1868, Metcalf becoming the purchaser for a small sum. Shortly after the sale, he conveyed to Bailey the part for which he had contracted and received Bailey's purchase-money. He also executed a deed, which he did not then deliver, to Mrs. Perkins, for the remainder of the farm, and sent a mortgage on this remainder to her, to be executed by herself and her husband, to secure the balance still due on the purchase-money mortgage, notifying them at the same time that a deed had been executed to Mrs. Perkins. Joseph C. Selden also, about that time, prepared a mortgage to secure his wards' claim, and sent it to Mr. and Mrs. Perkins to be executed. They declined to execute it, alleging that there was some error in the amount stated in it; but they executed the Metcalf mortgage, and returned it to him. He had it recorded April 5th 1869. On the 12th of April 1869, the Perkinses executed, duly acknowledged, and delivered to John Brecht, a mortgage on that part of the farm to be conveyed to Mrs. Perkins; this mortgage was recorded the same day.

On the 18th of March 1871, Mr. and Mrs. Perkins executed the mortgage to Selden; it was not acknowledged before a magistrate, but its execution was proved by a subscribing witness. On the 20th of March 1871, Metcalf assigned to John Brecht his mortgage from Mr. and Mrs. Perkins, and on the same day had the deed to Mrs. Perkins recorded. Brecht on the same day caused the Metcalf mortgage to be recorded the second time, after which, on the same day, Brecht's own mortgage was recorded; and afterwards, also on the same day, the mortgage to Joseph C. Selden was recorded.

Some weeks before recording the mortgage, Brecht had been informed by both Mr. Metcalf and Mr. Sill, of the understanding between the parties, and that the Selden mortgage was to stand next to the Metcalf mortgage, and be the second lien on Mrs. Perkins's land.

The land was sold under the Metcalf mortgage at the suit of Brecht as assignee; the fund in court for distribution arose from this sale.

In connection with Brecht's knowledge of the agreement as to the relative positions in which the several mortgages were to stand, was the following testimony :—

P. Metcalf testified : * * * "I had a conversation with Mr. Brecht some two or three weeks before the deed was left at the recorder's office. I then informed him of the arrangement that was made before I sold the property. He, Brecht, knew of this arrangement when he bought my mortgage. I do not know that Brecht ever had any knowledge of the arrangement about the Selden mortgage before the time mentioned. I never had any talk with him about it till he came to me and we had negotiations about selling the mortgage." * * *

James Sill testified : * * * "It was, I believe, in January or February 1871, not far from that time, that John Brecht spoke to me about this matter, and my best recollection is that I spoke in general terms of this arrangement, but I could not give him the amount that was due. I think that I told him that the amount was from eight to twelve hundred dollars, though I am not positive on this."

R. L. Perkins testified : " On the day of the sale, before the sale, I had conversation with John Brecht on the subject of the sale. I said to John Brecht that if he would not bid on the property that his mortgage should be reinstated on the balance of the farm after what was to be sold to F. P. Bailey was set off to him, Bailey. I do not remember that John Brecht made any reply in words, but seemed to assent and did not bid. By reinstating his claim or mortgage I meant to place him in the same position, in relation to other liens upon the property, that he then held. The property was sold for the nominal sum of five hundred dollars. I am confident Brecht knew of the order in which the liens stood against the property, and Brecht knew that his claim or lien was the last. I am confident Brecht had knowledge of the Selden lien. After the sheriff's sale to November Term 1868, I reinstated Brecht's claim. The only reason I did not reinstate the new Selden mortgage was because I did not think the computation was correct. This farm was worth in May 1871, one hundred dollars an acre ; there were about 113 acres of it, all improved."

John Brecht testified : * * * "Perkins saw me when at court, and said that the land was to be sold; that there would be about $4000 left due to Metcalf ahead of my claim, and Perkins said that the land would be sold and the claim of the mortgage would go on it again. He said he would give me a new mortgage on the land, but that Metcalf would have a mortgage ahead of mine. I made no reply whatever. I did not attend the sale. The first knowledge I had of this claim known as John C. Selden's trust was in the winter of 1870–1871."

In deciding, the auditor further reported : * * * " It is claimed

on the part of the heirs of Joseph Selden, deceased, that, under the agreement or understanding had before the sheriff's sale on the foreclosure of the old purchase-money mortgage, and Brecht being subsequently informed of that agreement or understanding, the Brecht mortgage should be postponed to the Selden mortgage, and that Brecht cannot, and ought not to be allowed to slip his mortgage in ahead so as to defeat the Selden claim. But, unfortunately for them, Brecht was not a party to that arrangement, and his mortgage was executed and recorded nearly two years before the Selden mortgage was reinstated, and it is not claimed, and it does not appear in the evidence, that Brecht knew of the arrangement either before or at the time his mortgage was executed, but that he knew of it, at most, only a month or two prior to the second Selden mortgage lien being perfected, if perfected it was, which was recorded on the 20th day of March 1871, long after Brecht's lien was perfected. But even if Brecht knew of the arrangement at the time it was entered into, he not being a party to it, your auditor is of the opinion that it could not possibly affect his rights. * * *

" What was this but an attempt by parol to keep alive and on foot an expired mortgage? The fact that they, the legal representatives of Joseph Selden, deceased, did, at last, succeed in getting a mortgage to reinstate a claim that had been wiped out by the first sheriff's sale, does not help them in the least, for so long as they suffered the matter to stand as left by the first sheriff's sale, it was but a parol agreement or understanding to keep alive an extinguished mortgage, which had been suffered to remain in that intangible shape for more than two years. * * * Brecht was not bound to look in the first instance beyond the record of the first sheriff's sale, and the notice to him, if it had any power or virtue in it when given to him in time, in the opinion of your auditor came entirely too late."

He reported therefore that the amount due on the Metcalf mortgage assigned to Brecht should be paid out of the fund in court, and that the balance should be appropriated to Brecht's own mortgage, excluding J. C. Selden, trustee, from any portion of the fund.

After exceptions, the court confirmed the report of the auditor and decreed that the money in court be paid out according to the report.

J. C. Selden, trustee, &c., appealed to the Supreme Court and assigned the decree for error.

*S. E. Woodruff* (with whom was *J. Sill*), for appellant.—Brecht was not misled and could not be, for Perkins had no title with which to mislead. He was simply the owner of an equitable interest upon performance of a certain act.

It was the duty of Brecht, in making a purchase or taking a

mortgage from Perkins and finding the title to the land in Metcalf, to make inquiry of them as to how it stood: Lodge v. Simonton, 2 Penna. Reports 439 ; Epley v. Witherow, 7 Watts 163 ; Jacques v. Weeks, Id. 267 ; Kaufelt v. Bower, 7 S. & R. 76 ; Bear v. Whisler, 7 Watts 144 ; Bayler v. Commonwealth, 4 Wright 37.

The mortgage from Mrs. Mary Ann L. Perkins to John Brecht was void, as she had no estate in the land before the delivery of the deed to her, all she could be said to have was a mere equity in the land, and such equity she was incapable of encumbering for her husband's debt, Bayler v. Commonwealth, 4 Wright 44.

*G. H. Cutler* and *J. W. Wetmore*, for appellee.—This is a contest for the right, and each party can insist on what the law awards him, all being innocent : Mode's Appeal, 6 W. & S. 280.

The execution of the deed by P. Metcalf to Mrs. Perkins, December 8th 1868, and the execution and acknowledgment of the mortgage by them and delivery to Metcalf, and the recording of it by Metcalf April 5th 1869, involve a delivery of the deed. It would not be revoked by Metcalf's effort to aid Selden to obtain his mortgage : Blight v. Schenck, 10 Barr 285.

As to a resulting trust they cited Strimpfler v. Roberts, 6 Harris 283 ; and as to notice, Kaufelt v. Bower, 7 S. & R. 64.

The opinion of the court was delivered, November 10th 1873, by SHARSWOOD, J.—We think it very clear that neither Selden, the appellant, nor Brecht, the appellee, had any legal lien on the funds in the court below for distribution. Selden's mortgage was not acknowledged before an officer duly authorized by law to take such acknowledgment, and was therefore utterly ineffectual to convey or encumber the estate of Mrs. Perkins. At the time Brecht's mortgage was executed Mrs. Perkins had no legal title. The deed from the purchaser to her, though executed, had not been delivered, as the auditor reports. If she had an equitable estate —a right to call upon Metcalf to execute and deliver to her a deed—it was an equity grounded upon the agreement of the parties at the sheriff's sale, by which she was bound to reinstate all the mortgages upon the part of the land to which she was entitled, according to their respective priorities. A chancellor would not have decreed a conveyance to her from Metcalf, without at the same time providing that she should carry out that agreement. It is hardly necessary to observe that the recording of Brecht's mortgage, after the delivery of the deed of Metcalf to Mrs. Perkins, did not cure the want of title in Mrs. Perkins at the time she executed the mortgage to him.

How then stood the question of distribution before the auditor ? The eighty-sixth section of the Act of June 16th 1836, Pamph. L. 777, provides that " in all cases of sales upon execution as afore-

[Selden's Appeal.]

said, when there shall be disputes concerning the distribution of the money arising therefrom, the court from which the execution shall have issued shall have power, after reasonable notice given, either personally or by advertisement, to hear and determine the same according to law and equity." At law Mrs. Perkins was entitled to receive the balance of the fund after the payment of the purchase-money to Metcalf, as far as appears no subsequent liens having been presented. Mrs. Perkins did not appear to make any claim. If then Mrs. Perkins was in equity bound by the agreement alleged to reinstate the several mortgages in the order of priority as they stood before the first sheriff's sale, and a chancellor would have decreed the specific performance of that agreement, then in equity in Pennsylvania whatever a chancellor would decree to be done shall be considered as actually done. The auditor reported that such an agreement was entered into, and on the faith of it Selden allowed the sale to go on and did not bid to secure his interest. It is not perhaps very material whether Brecht was a party to this arrangement or not, but if it be considered important, we think upon the evidence the auditor ought to have reported as a fact that' he was. Perkins testified : " On the day of the sale, at November Term 1868, before the sale, I had a conversation on the subject, of the sale. I said to John Brecht that if he would not bid on the property, that his mortgage should be reinstated on the balance of the farm, after what was to be sold to F. P. Bailey was set off to him, Bailey. I do not remember that John Brecht made any reply in words, but seemed to assent." John Brecht in his deposition did not deny this, but said he did not know of Selden's mortgage. But he ought to have known of it. The mortgage was on record, and he had constructive notice of it. His assent was to the arrangement that the sheriff's sale was not to affect the relative position of those who had liens on the property. It was evidently very much for his interest at the time. A large price was to be obtained for a part of the land, which was to be applied to the reduction of the purchase-money mortgage, thus improving the security of all the parties. We think therefore that the Selden mortgage was entitled in equity to priority of payment over that to Brecht.

> Decree reversed, and record remitted that a decree may be entered in the court below conformably to this opinion. The costs of this appeal to be paid by the appellee.