**Zerbe Township School District v. Lark et al. No. 2**

*Richard Henry Klein*, for accountant.

*Charles C. Lark, Daniel W. Kearnery* and *Frederick E. Lark*, for exceptants.

LARRABEE, P. J., twenty-ninth judicial district, specially presiding, and FORTNEY, P. J., October 15, 1948.—An adjudication and decree was filed by the chancellor on July 21, 1948 (see 20 Northumb. 178), directing the distribution of the balance of the funds in the hands of the receiver, consisting of royalties derived from the mining of coal on certain tracts of land purchased by the Commissioners of Northumberland County at county treasurer's sales for unpaid taxes. The chancellor awarded these royalties to the Commissioners of Northumberland County as trustees for the respective taxing districts entitled thereto, the School District of Zerbe Township and the Supervisors of Zerbe Township.

On August 12, 1948, the receiver, appointed by the court to operate the coal mines on said lands and receive royalties therefrom, filed a schedule of distribution pursuant to the direction of the chancellor, as set forth in the above-mentioned decree.

Exceptions to this adjudication and decree, as well as to the schedule of distribution, were filed by H. Marshall Reinhardt, West Line Coal Company, North

Line Coal Company, and Steam Coals, Inc., as former owners of said lands. Exceptions were also filed by the Commissioners of Northumberland County.

The commissioners and former owners contend that the distribution should be made on the basis of the respective amounts of delinquent taxes due the taxing districts rather than on a millage basis for the tax assessments for said taxing districts, and also contend that these royalties are not profits or surplus.

These exceptions were argued before the court en banc.

On May 13, 1947, the court en banc, in an opinion and decree (Zerbe Township School District v. Lark et al., 59 D. & C. 424), decided the question raised by the exceptions of H. Marshall Reinhardt as to the award of proceeds of royalties from the lands known as the Thomas Grant tract, formerly owned by Reinhardt.

The questions raised by the exceptions of North Line Coal Company and Steam Coals, Inc., were also decided by the court en banc in the opinion of May 13, 1947. A full discussion of these questions is to be found in this court's opinion refusing to dissolve the injunction as to these lands: Zerbe Township School District et al. v. Thomas et al., 61 D. & C. 355.

The questions raised by the exceptions of West Line Coal Company to the order directing the distribution of royalties were decided by the court en banc in its opinion of May 13, 1947. The default of the West Line Coal Company in its agreement for redemption, by installment payments, makes its legal status the same as if there had been neither a redemption within the two-year primary redemption period nor an agreement for redemption by installment payments under the Act of 1941.

The exceptions filed by the Commissioners of Northumberland County and the said former owners to the

adjudication and decree of the chancellor, Larrabee, P. J., twenty-ninth judicial district, specially presiding, filed on July 21, 1948 (reported in 20 Northumb. 178) raised inter alia, the question whether the chancellor should not have directed the receiver to prepare his schedule of distribution on the basis of the rateable total amounts of unpaid taxes due on each tract producing royalties from coal mined instead of the basis used by the chancellor, namely, the proportionate tax millages in effect in Zerbe Township at the time of these county treasurer's sales to the Commissioners of Northumberland County.

This is a new question in Pennsylvania. No decision by the appellate courts of Pennsylvania has been brought to our attention by counsel, and the court has been unable to find any decision, that declares definitely what is comprehended in the term "proportionate interests of a taxing district" or, what is of equal importance, how such proportionate interest is to be determined in making a distribution.

At the outset it should be borne in mind that these royalties in the hands of the receiver are not the proceeds derived from a sale of land under the provisions of a statute or the sale of coal made under the provision of a statute. Therefore, we feel that the provisions of any statute designating how the proceeds of the sale of land shall be distributed to the taxing districts do not apply to the question before us and there is no statute directing how such royalties shall be distributed to the taxing districts.

We are of the opinion that a fair and equitable method of determining the proportionate interests or proportionate shares of the taxing authorities involved, would be the proportionate millages fixed for tax assessments that were levied on said lands as of the date when the county commissioners purchased the same and thereby became trustees.

Testimony given before the chancellor, and which is undisputed, shows that the assessments for all tax purposes were the same in Zerbe Township in the years when the Commissioners of Northumberland County purchased at county treasurer's sales the lands in question.

In arriving at this method we are mindful of the well-established principle that one redeeming lands sold at county treasurer's sale shall not be permitted to do so "at the expense of the taxing authorities": Erie Appeal, 159 Pa. Superior Ct. 18. Furthermore, we must keep before us the principle announced by the appellate courts of this State that in such matters the public interest is always greater than the private interest. For these reasons we conclude that if these royalties were directed to be applied proportionately on the unpaid delinquent taxes due the respective taxing districts, as contended for by exceptants it would, in effect, be handing back to the former owners, indirectly, said royalties to apply on their back taxes. It is obvious that such effect would result from a distribution made on that basis.

For illustration, if the position of exceptants were to be adopted then the former owner could allow enough royalties to come into the hands of the receiver to pay off a large part of the back taxes on his coal lands and after these royalties had been applied to the delinquent taxes he could then redeem the lands for practically little of his back taxes. He would, therefore, benefit at the expense of the taxing authorities and would receive credit for the royalties applied to back taxes although he did not redeem within two years. In so doing he would thus nullify the effect of the decision in Hunter v. McKlveen et al., 353 Pa. 357.

A further reason that appeals to us in adopting the rate of millages as a proper method of distribution is that it would not, in effect, penalize those districts

which were prompt in collection of their taxes, whereas if the distribution were to be made on the basis of the respective proportionate amounts of delinquent taxes due the taxing districts it would have the effect of directly favoring those districts that were careless or inefficient in collecting their taxes and to the manifest disadvantage of those districts that were prompt and efficient in collecting them.

It is undisputed that none of the coal lands in question have been redeemed, save in the single instance where part of the lands of H. Marshall Reinhardt were redeemed and where proper refund of royalties due him has been made. Therefore, we are of the opinion these royalties should be distributed as though they were *profits* over and above taxes, interest and penalties.

Profits or surplus are to be distributed by giving each taxing authority its proportionate share. See Benzinger Township School District v. Elk County, 50 D. & C. 449, cited in a footnote in the opinion of Zerbe Township School District et al. v. Thomas et al., 353 Pa. 162, at page 170, also cited in a footnote in the opinion of Erie Appeal, 159 Pa. Superior Ct. 18, at page 26.

Exceptants have argued there can be no surplus until all the taxes are paid. Naturally this raises the question how would exceptants have this royalty fund distributed if the former owners of the lands redeemed them now and paid off all the back taxes? How could the fund be divided then as there would no longer be any taxes due the taxing districts from the redeemed lands? It is obvious that, according to their own theory, no basis for a division of the fund would remain. However, since the chancellor has treated this fund of royalties as *profits* we are of the opinion that the question of whether or not it is also surplus may be unimportant.

For further illustration of plaintiff's position we point out that if there were no delinquent or unpaid taxes due these taxing districts in any given year and the receiver had a fund consisting of profits from royalties on hand for distribution then it is self-evident he could not make distribution on the basis contended for by exceptants, that is, on the proportionate amounts of unpaid taxes due the taxing districts.

It is also self-evident that a method of distribution based on the millages fixed for tax assessments for school and township purposes could be made in any given year on a basis that was fair and equitable to all the taxing districts concerned regardless of whether or not there were any unpaid taxes due the taxing districts.

Exceptants have contended that the court cannot create a method of distribution unless one is provided for by statute. However, it must be remembered that this is an equity case in which the court appointed a receiver to operate certain coal mines and coal stripping operations on lands purchased by the county commissioners at county treasurer's sales. Very serious charges were made in plaintiff's bill in equity and the appointment of a receiver was found necessary to protect the interests of the various taxing authorities which maintained that the county commissioners, as trustees of these lands, had committed a breach of their fiduciary relationship as to these lands.

Incidentally, it is to be noted that no answer to the averments contained in plaintiff's bill in equity has ever been made by defendants although that bill was filed and copy served more than three years ago, on September 15, 1945.

A court of equity has the right to pass on the disposition of trust property and the adjustments of the equities of the beneficiaries.

In 19 Am. Jur. 154, §168, entitled "Equity" under the subtitle "Relief or Remedy", it is stated:

"The equity court has jurisdiction of an accounting by the trustee and may, in some circumstances, direct him to dispose of the trust property and adjust the equities of the persons who are entitled thereto."

Draper v. Davis, 104 U. S. 347, 26 L. Ed. 783, is cited in support of this statement of the law.

Remembering that in Zerbe Township School District v. Thomas, 353 Pa. 162, the jurisdiction of this court was affirmed, it follows that that jurisdiction draws to it the right to solve the method of distribution of these royalties in the hands of the receiver appointed by this court.

In the case of Peoples-Pittsburgh Trust Company v. Saupp, 320 Pa. 138 (1936), the Supreme Court, on page 146, said:

"In Pomeroy's Equity Jurisprudence, 4th Edition, Volume 1, Section 111, appears this statement: 'Equity has followed the true principle of contriving its remedies so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has been violated. It has, therefore, never placed any limits to the remedies which it can grant, either with respect to their substance, their form, or their extent; but has always preserved the elements of flexibility and expansiveness, so that new ones may be invented, or old ones modified, in order to meet the requirements of every case, and to satisfy the needs of a progressive social condition, in which new primary rights and duties are constantly arising, and new kinds of wrongs are constantly committed."

In Selden's Appeal, 74 Pa. 323 (1873), on page 327, Judge Sharswood called attention to the fact that a court of equity in disputes concerning the distribution of money arising therefrom has power to hear and determine the same "according to law and equity".

The Court of Common Pleas of Dauphin County, sitting in equity, in the case of Sweeney, etc., v. Mechanics Trust Co. et al., 55 D. & C. 80, in determining the distribution of the assets of closed banks in the hands of the Secretary of Banking as the receiver, used its equitable powers to determine the method of distribution, although there were statutes which in general prescribed that method. It is true that equity, in dealing with legal rights, adopts and follows the rules of law wherever such rules are applicable (Albright v. Albright, 228 Pa. 552), and that wherever the right of parties is established by law, equity is without power to change that right: Abrahams, Admx., v. Wilson, Mayor, et al., 134 Pa. Superior Ct. 297. The court is of the opinion that there is no rule of law which governs in this question before us and therefore equity has a right to solve the problem and do equity between the parties in accordance with their proportionate interests.

In support of their contention that distribution should be made on the basis of the rateable total amount of unpaid taxes due on each tract producing royalties from coal mined thereon exceptants relied chiefly on the decision in New Castle School District v. Travers et al., 353 Pa. 261 (1945), and on the Act of June 25, 1947, P. L. 913. Exceptants argued that the royalties in the hands of the receiver were rents and therefore must be distributed as provided by the Act of 1947.

We are of the opinion that this position cannot be sustained for the reason that the said Act of June 25, 1947, provides in section 3:

"The rents and rentals of any such property shall be computed upon the same basis, according to the same formula, and subject to the same priorities, that taxes and the proceeds of the resale of such real estate,

are computed and distributed by the trustee under the provisions of law."

These provisions of the law referred to in said act are the various statutes authorizing the county commissioners to sell and dispose of real estate which had been purchased by them at county treasurer's sale for unpaid taxes. These acts are as follows:

A. By private sale: Act of May 21, 1937, P. L. 787, as amended by the Acts of July 29, 1941, P. L. 600, and May 21, 1943, P. L. 282, 72 PS §5878(a) et seq. (Lackawanna County Appeal, 157 Pa. Superior Ct. 137; Erie School District Appeal, 155 Pa. Superior Ct. 564.)

B. By public sale: Act of May 29, 1931, P. L. 280, sec. 17, as amended by the Act of May 21, 1943, P. L. 364, 72 PS §5971(q). (Erie Appeal, 159 Pa. Superior Ct. 18.)

In the case of Lackawanna County Appeal, 157 Pa. Superior Ct. 137, the question before the court was the distribution by the county commissioners of the proceeds of a private sale of land purchased by them at county treasurer's sale for unpaid taxes. The commissioners had obtained the approval of the court to sell the land at private sale under the Act of May 21, 1937, supra. The school district took the position that the taxes should be lumped and the total rateable amounts of unpaid taxes should then be prorated. The county contended that the taxes under the Act of 1937 had to be paid on a priority basis year by year. The contention of the school district is stated by the Superior Court as follows (p. 139):

"The school district filed an answer contending that all taxes should be lumped together regardless of their respective priorities, and that the fund should then be apportioned to the several authorities according to their total unpaid taxes."

The Superior Court reversed the court below and decided against the lumping of taxes to determine rateable shares between tax bodies, and said (p. 140) :

"We think the words 'in proportion to their tax . . . claims' apply not merely to the amounts of the claims but to their respective priorities. Consequently, we agree with the contention of the appellants."

The decision in Lackawanna County Appeal, supra, is therefore authority for the rejection of the contention of the Commissioners of Northumberland County in the instant case that the principle of lumping taxes should be used in distributing the proceeds of royalties in the hands of Edward J. O'Rourke, receiver, because if the royalties are to be considered as rents then they cannot be distributed on the basis of the lumping of the unpaid taxes.

In contending that the royalties should be lumped and treated as rent, exceptants in the present case are taking an inconsistent position and which, in our opinion, is impossible of performance.

The case of New Castle School District v. Travers, 353 Pa. 261 (1945), was decided before the Act of June 25, 1947, and the effect of that decision would appear to be that rents cannot be distributed until the lands *are sold*. In that case the Supreme Court affirmed the following language of the court below (p. 266) :

"This method must be followed in distributing the rents from tax lands. The rents must be distributed in the same proportion as the proceeds of the lands. As a necessary corollary, we cannot distribute rents until the lands from which rents have been derived have been sold."

However, that part of the decision in the New Castle case would now appear to be changed by section 2 of the Act of June 25, 1947, which reads as follows (72 PS §6154.2) :

"Whenever the trustee in any county of this Commonwealth has purchased real estate at a tax sale, it shall hold the title thereto in trust for itself and the other taxing authorities having tax claims against such real estate, and so long as it holds title to said real estate and collects rents therefrom, it shall make distribution of such rentals to and among the several taxing authorities according to their respective interests therein without unreasonable delay."

If this court were to rely on the decision in the New Castle case as contended for by the Commissioners of Northumberland County, then it follows that it should refuse to make any distribution of these royalties if the court also believes that the royalties should be treated as rents. If the court is to follow the Act of June 25, 1947, which apparently supersedes the principle declared in the New Castle case, then the court should distribute the royalties if it believes they are rents. We cannot follow both the Act of 1947 and the decision in the New Castle case because the one overrules the other. Here again exceptants in the present case are taking an inconsistent position which we feel is impossible of performance.

It is the opinion of this court that the Act of June 25, 1947, is intended to apply only to rents arising from a lease and not to royalties from coal collected by the receiver as in the instant case.

These royalties in the hands of the receiver are *profits* derived from operating these county owned coal lands and therefore, in our opinion, are not to be distributed as unpaid taxes but belong to the taxing districts in their proportionate shares as they existed at the time of the creation of the trusteeship. We feel that neither the New Castle case, supra, nor the Act of June 25, 1947, are pertinent to this question before us. It is a *new* question in Pennsylvania.

In the case of Hunter v. McKlveen, supra, it was held that the taxing districts and not the former owner were entitled to the proceeds arising from the condemnation of land taken by the Pennsylvania Turnpike where there was no redemption within the two-year primary redemption period.

In Roth's Appeal, 159 Pa. Superior Ct. 145, it was held that the former owner can redeem under the Act of 1941, P. L. 535, 72 PS §6105.1 et seq., after the expiration of the primary redemption period of two years and until the title has passed out of the county commissioners, by paying the unpaid taxes due.

In the present case the chancellor has treated the royalties in the hands of the receiver as *profits*.

We feel this was in accord with the only decisions on the subject and was the logical and proper approach to the question under the existing case law.

These coal lands are still owned by the county commissioners as trustees and when they are sold by them they may then distribute the proceeds to pay taxes due, which have accrued both before and after the county acquired title: Erie Appeal, 159 Pa. Superior Ct. 18. But, in our opinion, none of these facts should interfere with the distribution by the receiver of the fund derived from the operation of the coal lands. The fund really is a profit from their operation. It is a benefit to the taxing bodies concerned, all of whom have unpaid taxes due on the coal lands producing the existing royalty fund.

Exceptants also contend that the balance of taxes due at the time of actual distribution should be the basis of the proportions between the taxing districts. The chancellor, on the other hand, in his opinion, determined that the millages in effect at the time of the creation of the trusteeship should be used to determine the proportionate shares of the districts. The chancellor acted on the same principle as that in effect

against an insolvent estate in which claims are fixed as of the date of the insolvency. The law requires certainty in the fixing of the time in such a matter and by custom and by law the point at which claims are fixed in amount is ordinarily that instant when the insolvency proceeding or trusteeship or receivership or bankruptcy takes place.

Keeping in mind the principle that the Superior Court has outlawed the lumping of taxes (Lackawanna County Appeal, supra), and also remembering that the fund in question represents the profits from the operation of the receivership rather than rents or proceeds of sale of real estate under a statutory proceeding, the court is of the opinion that the chancellor was correct in using the date of the creation of the trusteeship as the date to fix the proportionate shares of the taxing districts.

In 28 Am. Jur. 788, §33, under the general head of "Insolvency" and the subtitle of "Claims of creditors and distribution of assets" it is stated:

"Any creditor having a claim against an insolvent at the time of the commencement of insolvency proceedings may file his proof of claim and receive such dividend or allowance as the facts justify. The right of the creditor of an insolvent to dividends is based on the amount of his claims at the time his interest in the assets vests by the statute, or deed of trust, or rule of law, under which they are to be administered. Where an estate is insolvent and all the claims are of like dignity, the court declares the dividend upon the basis of the amount of principal due *at the time the property passed* into the hands of the court." (Italics supplied.)

In Swearingen v. Sewickley Dairy Co., 198 Pa. 68, 53 L. R. A. 471 (1901), there was a bill in equity filed by creditors against a corporation and its stockholders to enforce the payment of an alleged balance due on stock subscriptions. The court held that such sub-

scriptions are a fund in the hands of the stockholders charged with a trust for the payment of the corporate debts. This trust does not depend on statute but is deduced on general principles of equity from the premise that the capital is publicly pledged to those who deal with the corporation for their security. In determining the date upon which the rights of the beneficiaries should be fixed the Supreme Court said (p. 73):

"But it would seem that the status of the stockholder as holder of a fund liable at least contingently to the creditors, must be fixed at the time and by the fact of the ascertainment of insolvency. It is the general rule that insolvency fixes the relative rights of all the parties concerned."

The Supreme Court, in this same case, in discussing when the rights of the creditors were fixed, said, page 75, that upon the fact of insolvency "it became a fund belonging equally in equity to all the creditors . . .," and that the right of action of the creditor began at the time of insolvency, and added: "The right of action of the plaintiff, whatever it was, accrued upon the fact of insolvency of the dairy company. . . ."

The following language of the Superior Court in Andrews Land Corporation's Appeal, 149 Pa. Superior Ct. 212, on 216, indicates that the trusteeship of the county *began at the time of the purchase* of the real estate by the county commissioners from the county treasurer:

"In either event the county or city purchasing the real estate at the respective sale, for less than the full amount of such taxes and costs, became a trustee for all the tax levying authorities to whom unpaid taxes were due. . . ."

The chancellor in the instant case found as a fact that there was only one assessment of real estate for all taxing authorities in Zerbe Township and used the

millage in effect at the time of the treasurer's sale to determine the proportionate shares of each taxing district, since all taxing districts had unpaid taxes due on the lands in question.

The court is of the opinion that this method is in accord with the authorities.

Exceptants in the present case argue that the contracts made by the receiver with the various parties who mined coal on the lands in question during the receivership and paid him a royalty for each ton of coal so removed are either:

(a) A sale of coal in place and therefore the proceeds of real estate, or

(b) A lease and therefore rent of real estate.

Exceptants argue, therefore, that if the royalty proceeds are rent they must be treated as though they are the proceeds of sale under the Act of 1947 and if they were the proceeds of the sale of coal in place, they were again the proceeds of sale of real estate and must be treated the same as the proceeds of other sales of real estate under statutory procedure applying to the county commissioners.

The court is of the opinion that the receiver could not by his actions or his type of contract, entered into with persons to mine the coal, thereby change the law on the distribution of this fund. That is a matter of law for this court to decide. The terms of the contracts which the receiver entered into with various persons who have mined coal on the lands in question might determine the legal rights as between the receiver and the persons with whom he contracted but they would not determine the method of distribution between taxing bodies. Therefore, we are of the opinion that the terms of these contracts made by the receiver are not material because there is no contention raised here between the receiver and the persons with whom he has contracted.

There is no question that the right to receive coal royalties under a lease is personal property (Smith v. Glen Alden Coal Co. et al., 347 Pa. 290, on 298 (1943)), although a lease under certain circumstances with the right to mine to exhaustion without time limit has been held to be a sale of the coal in place: Gilberton Fuels, Inc., v. P. & R. C. & I. Co., 342 Pa. 192. However, that case does not hold that such a distribution has to be made under any particular method provided by a statute. The former owners have no right in the present case to raise any questions as to the distribution of a fund because none of the former owners has redeemed in full within the two-year primary redemption period. If they redeem after the expiration of that period, they have no claim whatsoever on what was taken out of the land during the two-year period but can redeem only *what is left:* Lovell v. Dulac Cypress Co., 117 F. (2d) 1 (1941), C. C. A. 5th, affirming 31 F. Supp. 9 (1940). Certiorari denied, 314 U. S. 672; rehearing denied, 314 U. S. 713.

What the receiver has done here is to keep those coal lands productive during his receivership and that was done by the mining and selling of coal. The *cash profit* from these operations is now before the court for distribution.

The land in question has not been sold by the receiver. That is still intact and can be sold at any time by the county commissioners. It is true some of the coal is no longer there. But after the expiration of the two-year primary redemption period that is a matter only between the taxing districts and the county as trustee, which own the absolute title to the coal.

The same rule would apply if a receiver operated a factory. The machinery would be there, but the receiver might wear it out in operation. The total value of the property might be lowered by the operation

of the property by the receiver. Yet the proceeds of his operation would be personal property.

If the proceeds in the hands of the receiver in the present case are the proceeds of the realty, as claimed by exceptants, at least *such "realty" was not sold by the receiver under any statute defining a method of distribution and that is the real question at issue here.*

Counsel for the county commissioners has cited the case of Hosack v. Crill, 204 Pa. 97 (1902), as authority for the proposition that the royalties received by the receiver are proceeds of real estate, being the proceeds of the sale of coal in place. We are of the opinion that case does not support that proposition. That decision held, inter alia, that "the royalties accruing after the death of the grantor, being purchase money for the coal sold, are distributable as personalty according to the provisions of the will of John Hosack" (p. 104).

As we are of the opinion that since the question whether the royalty fund represents proceeds of real estate is not important so far as the taxing bodies are concerned, it should not affect the method of distribution betwen them. If a county after the two-year statutory period can sell brewing machinery contained in a brewery (Moeller v. Washington County et al., 352 Pa. 640 (1945)), and can keep as trustee the proceeds of the condemnation of land for a State highway (Hunter v. McKlveen, 353 Pa. 357 (1946)), and can also retain as trustee the rents and profits from mortgages (Day v. Ostergard, 146 Pa. Superior Ct. 27 (1941)), also keep as trustee the proceeds of sale of timber cut from the land during ownership by the county (Lovell v. Dulac Cypress Co., 117 F. (2d) 1), and as trustee also keep the rents after that time, (Powell v. Lawrence County, 60 D. & C. 581 (1947)), then we are of the opinion it could keep as trustee the funds derived as royalties from the operation of coal mines. And further, if the county can do it then we

are of the opinion the receiver in this case should have the right to do it. Since the acts of the receiver have not been done under any act of assembly that defines a method of distribution for such coal royalties and requires a certain system of distribution to be followed, the court is of the opinion that a proper method has been applied by the chancellor in the distribution of these royalties and that a decision of whether they are real or personal property is not necessary in order to make a distribution.

The undisputed testimony before the chancellor established the millages in effect in the years 1943 and 1945, respectively, in Zerbe Township, when these lands were sold to the county commissioners, and shows there was only one assessment in effect in the township for all purposes.

The court is of the opinion that the receiver, in his schedule of distribution, has complied with the requirements of the law.

## Decree

And now, to wit, October 15, 1948, after due consideration by the court en banc, the exceptions filed by the Commissioners of Northumberland County, West Line Coal Company, North Line Coal Company, Steam Coals, Inc., and H. Marshall Reinhardt, to the decree of the chancellor, Larrabee, P. J., twenty-ninth judicial district, specially presiding, filed July 21, 1948, determining the method of distribution of the funds in the hands of Edward J. O'Rourke, receiver, in his first and second accounts, and the exceptions filed by the Commissioners of Northumberland County, West Line Coal Company, North Line Coal Company, Steam Coals, Inc., and H. Marshall Reinhardt, to the schedule of distribution filed by Edward J. O'Rourke, receiver, on August 12, 1948, pursuant to the said decree of the chancellor filed July 21, 1948, be and the same are,

hereby dismissed and the decree of the chancellor is confirmed absolutely.

The schedule of distribution of the receiver filed August 12, 1948, is also confirmed absolutely and the receiver is directed to pay out the balance set forth in his schedule of distribution to the parties thereto entitled.