## Martin, Appellant, v. Megargee.

*Trover—Conversion—Stock—Fraud—Contract—Speculative dealings.*

A woman owning stock assigned it with a general power of attorney
with the understanding that the assignee should use the stock as collateral
in stock speculation for their joint account. The assignee gave a receipt for
it, and agreed to return the stock on demand. The assignee sold the stock
and the proceeds were lost in the speculation on the joint account. *Held*,
that an action of trover would not lie against the assignee for the stock.

Argued May 11, 1905. Appeal, No. 376, Jan. T., 1904, by
plaintiff, from order of C. P. No. 3, Phila. Co., June T., 1899,
No. 875, sustaining exceptions to referee's report in case of
Adele G. Martin v. Monroe W. Megargee. Before MITCH-
ELL, C. J., FELL, BROWN, MESTREZAT and ELKIN, JJ. Af-
firmed.

Exceptions to report of George McCurdy, Esq., referee.

From the record it appeared that the action was in trespass
by capias for the conversion of stock delivered by the plaintiff
to the defendant. The referee found in favor of the plaintiff.

Exceptions to the referee's report were sustained, Mc
MICHAEL, J., filing the following opinion:

The testimony shows that there had been a course of deal-
ings between the plaintiff and defendant, in which dealings
the plaintiff had loaned money to the defendant to enable him
to speculate in stocks for their joint benefit; and in prior
transactions considerable profits had been made, and the plain-
tiff had received her share of these profits—had been repaid
the sums of money which she had advanced, and a consider-
able amount in cash, which was her share of the profits. Thus,
on the sum of $1,000 advanced by her to him for stock specu-

lation, she received a profit of $770, and on a loan of $500 she received a profit of $120.

The testimony further shows that the plaintiff had placed the certificates of stock which are the subject of this suit in the hands of the defendant for the purpose of enabling him to speculate on their joint account. It is true that she received receipts from the defendant for the stock, by which he agreed to return the stock on demand, and it is also true that she testified that the stock was to be temporary collateral, but she further testified as follows : " I gave it to him with the understanding that he was going to give it to his broker."

The examination in chief and the cross-examination of the plaintiff developed the fact that she fully understood what she was doing, and that, as the defendant had been successful in prior speculations, she entrusted him with the shares of stock which are the subject of this controversy for the purpose of further speculation. And after this stock was assigned to defendant, the plaintiff got further profits.

We think that this testimony brings the case within the ruling of Duffield v. Miller, 92 Pa. 286.

Undoubtedly, if the stock assigned by the plaintiff to the defendant had been hypothecated for the purpose of their joint speculations and swept away, she would have had no right to recover in this form of action ; and the fact that the defendant sold the stock for the purpose of raising money and applying it to their speculations does not vary the principle. The plaintiff authorized the defendant to use her stock for the purpose of speculation, and clothed him, through a power of attorney, with the rights of ownership. He used the stock, was unfortunate in his speculation, and the stock was lost.

The plaintiff transferred the stock to the defendant for the purpose of using it as collateral in their stock speculations, and authorized the defendant to make use of it by a general power of attorney. The stock was sold and the proceeds lost in speculations. We are of opinion that the plaintiff no longer had a property in the chattel, general or special, or the actual possession or the right to immediate possession, which are fundamental to a right to maintain an action of trover.

It is true that the stock was sold by the defendant and not merely hypothecated, but she had clothed him with authority

to do this when she assigned to him the certificates, with power of attorney indorsed thereon.  As was said in Duffield v. Miller, 92 Pa. 286, above cited: " When the plaintiff authorized the managers of a failing bank to use his bonds to raise money, he must have known that it might not be in their power to return them.  At any rate, there was a risk, and he assumed it.  Having been pledged by his authority, the pledgee has a right to sell for nonpayment of the money borrowed, and such sale passed the title.  At the time this suit was brought the bonds had been sold and the plaintiff's rights divested.  He owned nothing that could be the subject of an action of trover.  All that was left him was a right of action upon his agreement.  It is well settled that to maintain trover the plaintiff must have a property in the chattel, general or special, and the actual possession or the right to immediate possession : Mather v. Trinity Church, 3 S. & R. 509; Castor v. McShaffery, 48 Pa. 437 ; 1 Chitty on Pleading, 148, and cases there cited."

The referee has based his conclusions of law upon the case of Dow v. Emerson, 11 W. N. C. 267.  That was a case of habeas corpus.  It was decided that the relator should not be discharged because there was evidence of deliberate fraud.  But the point decided in Duffield v. Miller, 92 Pa. 286, was not before the court, nor is there anything inconsistent in the two rulings.

The first, second and third exceptions to the report of the referee are sustained, the report is set aside and judgment is entered for the defendant.

*Errors assigned* were in sustaining exceptions to referee's report.

*J. H. Brinton,* for appellant, cited : Dow v. Emerson, 11 W. N. C. 267.

*Wm. F. Johnson,* with him *A. S. L. Shields,* for appellee.

PER CURIAM, June 22, 1805 :
Judgment affirmed on the opinion of the court below.