## Levy *v.* Terminal Warehouse Company, Appellant.

Argued October 17, 1935.

Before KELLER, P. J., BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Howard H. Rapp,* with him *Henry R. Heebner* and *Morgan, Lewis & Bockius,* for appellant.

*Harry J. Likoff,* for appellee.

OPINION BY RHODES, J., January 31, 1936:

This is an action of trespass brought by the plaintiff to recover damages for the alleged conversion of 183 half-barrel beer kegs by the defendant warehouse company. The plaintiff recovered a verdict in the court below. The only assignment of error which we need consider, on this appeal by the defendant, is the refusal of its motion for judgment n. o. v.

Prior to November 16, 1933, one Samuel Ellman deposited with the defendant, in its warehouse in Philadelphia, two lots of beer kegs, which Ellman had imported from Roumania. Certain charges were owing on the kegs for freight, duty, etc., and Ellman arranged with the defendant to advance funds to him to pay these charges. Accordingly, Ellman received a loan of $620.57 on the lot of 401 kegs, and a loan of $804 on the other lot of 402 kegs; 390 being half-barrel kegs and 12 being quarter-barrel kegs. The loans were evidenced by two promissory collateral demand notes, payable to the order of the defendant and signed by Ellman. The defendant issued negotiable warehouse receipts to Ellman for each of these lots, and both of these receipts were endorsed in blank by Ellman, deposited with the defendant as collateral for the loans, and attached to the notes.

On or about December 27, 1933, Ellman and the plaintiff entered into an arrangement to dispose of these beer kegs. On December 27, 1933, Ellman executed and delivered to the plaintiff the following order (as offered in evidence): "Philadelphia, Pennsylvania Terminal Warehouse, Front & Race Streets, Philadelphia, Pa. Gentlemen: This will be your authority to deliver to Mr. M. S. Levy or order, 800 half-barrels beer kegs stored on your premises in the name of the undersigned Samuel Ellman, upon payment of charges accrued against the same. (signed) Samuel Ellman. Sworn and subscribed to before me this 27th day of December, A. D. 1933. (signed) Frances E. H. Graham, Notary Public. (signed) M. S. Levy." On the following day the plaintiff delivered this order to Mr. Carter, the defendant's chief clerk, paid the defendant the charges due on 200 kegs in the amount of $539.77, and received a requisition for the withdrawal of this number. The account at all times remained in Ellman's name. On January 4, 1934, the 200 kegs were withdrawn by plaintiff's nominee, the Eagle Cooperage Company. Plaintiff testified that he had sold 800 kegs to the Viking Brewery Company. Following this withdrawal, the plaintiff, on January 22, 1934, paid to the defendant the amount of the loan and the storage and interest charges accrued against the remaining lot of kegs, and received a requisition therefor, but the same does not appear in the evidence. The defendant issued a receipt to Ellman for $1,150.13, the amount paid by the plaintiff. The brewery company withdrew 405 of the remaining barrels on January 23, 1934, leaving a balance of 183 half-barrel kegs. These 183 kegs were not withdrawn by the brewery company, which refused delivery because they were not satisfactory. The plaintiff did nothing with respect to these 183 kegs until July, 1934, when he telephoned defendant's manager and made a demand for them. He was informed that they were not

there. The quarter-barrel kegs were not claimed by the plaintiff, and 3 half-barrel kegs were withdrawn before the order of December 27, 1933.

The defendant, on March 21, 1934, received the following letter from Ellman (as offered in evidence): "Samuel Ellman, Importer, 6140 Chestnut Street, Philadelphia, Pa. Pencil Notation: Dave—See what instructions we have on file to make delivery to Levy JWD March 20/34. Terminal Warehouse Co., Philadelphia, Pa. Gentlemen: Sometime in January 1934 I gave you an order that you may deliver my empty beer barrels to Mr. M. S. Levy. I still have a balance of about 190 bbls in your Front and Race Sts. Warehouse and I therefore respectfully request you not to deliver any more barrels only on my order. You will please consider my previous order to make delivery to Mr. M. S. Levy revoked. Thanking you, I am Respectfully yours, Signed: Samuel Ellman. Pencil Notation: 12/28 M. S. Levy $539.77 Storage and Loan Red Pencil JMD" Pencil notations were inserted after receipt of letter.

The evidence shows that 179 of the 183 kegs remaining were delivered by the defendant to Ellman subsequent to the receipt of this letter. Four of these kegs were delivered by the defendant to Ellman prior to the receipt of this letter of revocation—one keg on February 6, 1934, and three on March 16, 1934.

The jury rendered a verdict for the plaintiff in the amount of $777.75, being the full value of the 183 kegs delivered by the defendant to Ellman. The defendant appealed from the judgment entered thereon.

The appellee admits that he never had title to the kegs, and concedes that Ellman was the undisputed owner thereof. He contends, however, that he had the right to possession. He bases his right to possession on the Ellman order of December 27, 1933, the payment of the loans and charges to the appellant, the requisitions issued by the appellant, the agreement between the

appellee and Ellman and the alleged notice thereof to the appellant, and an alleged vested right in the kegs, which could not be revoked by Ellman.

The Act of March 11, 1909, P. L. 19, §§9, 10 (6 PS §§139, 140), provides as follows:

"Section 9. A warehouseman is justified in delivering the goods, subject to the provisions of the three following sections, to one who is,—

"a. The person lawfully entitled to the possession of the goods, or his agent;

"b. A person who is either himself entitled to delivery by the terms of a non-negotiable receipt issued for the goods, or who has written authority from the person so entitled, either indorsed upon the receipt or written upon another paper; or,

"c. A person in possession of a negotiable receipt, by the terms of which the goods are deliverable to him or order, or to bearer; or which has been indorsed to him, or in blank, by the person to whom delivery was promised by the terms of the receipt, or by his mediate or immediate indorsee.

"Section 10. Where a warehouseman delivers the goods to one who is not in fact lawfully entitled to the possession of them, the warehouseman shall be liable as for conversion to all having a right of property or possession in the goods, if he delivered the goods otherwise than as authorized by sub-divisions (b) and (c) of the preceding section; and though he delivered the goods as authorized by said subdivisions, he shall be so liable if, prior to such delivery, he had either,—

"a. Been requested, by or on behalf of the person lawfully entitled to a right of property or possession in the goods, not to make such delivery; or,

"b. Had information that the delivery about to be made was to one not lawfully entitled to the possession of the goods."

Appellee claimed no title to the kegs in question, and

he never had actual possession thereof. The question arises—Did he have a right to possession, and hence a right to maintain his action against the appellant? It is apparent that such rights as appellee may have had were derived from Ellman.

The requisition issued by the office of the appellant to its warehouse for the removal of the kegs was based upon the order of December 27, 1933, permitting removal by the appellee of Ellman's property. The only requisition in evidence was the one for 200 kegs which were removed by the appellee. The requisition was not a negotiable warehouse receipt nor the equivalent thereof, and was subordinate to Ellman's order. This requisition was merely a direction to the warehouse employees to permit the removal of kegs of Ellman, under the authorization to the appellant given by Ellman. If the appellee had the right to possession of all the kegs, superior to the right of the owner Ellman, it must be found elsewhere than in appellant's requisition.

We find nothing, upon an examination of the evidence, to indicate that the appellant was a party to any arrangement between the appellee and Ellman. Nor do we find any sufficient testimony to charge the appellant with notice of such arrangement and with the necessity to recognize, under all circumstances, the appellee rather than Ellman in making delivery of the stored kegs. Appellee's relationship with the appellant rose no higher than that of an agent of Ellman, and all of the facts in the case are consistent with the inference that appellee was entitled to possession of any of the kegs only as Ellman's agent. Appellee argues that the appellant's receipt issued to him on December 28, 1933, in the amount of $539.77, subsequent to which the 200 kegs were withdrawn, established the fact that appellant recognized him and dealt with him as principal and not as agent. The receipt did not change the

legal ownership of the kegs, nor is it inconsistent with the agency of the appellee. The subsequent receipt for $1,150.13 was made to Ellman. The testimony is barren of anything to charge the appellant with knowledge or notice that the appellee disputed Ellman's title or had an adverse claim, or that he was anything but an agent of Ellman, or that he alone was to have the exclusive right to possession of Ellman's property. See People's Bank v. Etting and Groome, 108 Pa. 258; Thoms et al. v. D. C. Andrews & Co., Inc., 54 F. (2d) 250; Restatement of the Law, Torts, §235, subsection (2). In this connection the appellee testified: "Q. At that time you went there to the Terminal Warehouse you didn't request, did you, that the account be transferred from the name of Samuel Ellman to your name? A. No, sir, there was no request made for that. Q. At all times thereafter the account remained in the name of Samuel Ellman? A. To the best of my knowledge due to the fact I was later under the impression—" A witness called for the appellee also testified: "Q. All deliveries that were made at all times on this account were made in the name of Samuel Ellman; is that true? A. That is right."

The order given by Ellman, on December 27, 1933, was an authorization for the appellant to deliver to the appellee, or his order, 800 half-barrel beer kegs, upon the payment of charges accrued against the same. Appellee contends that under the order the right to possession was ceded to, and conferred upon, him, and that it was irrevocable. It did not change the ownership of the property; it did not create any property rights in the appellee; and it in no way could be construed as an irrevocable notice or order to the appellant. On the contrary, under all the evidence, it could not be construed as anything other than an authorization for the appellee to act for Ellman. While this order was unrevoked, the appellant could recognize the

appellee, and deliver the goods to him, or his order, which were owned by Ellman. If Ellman had desired to recognize the appellee to the extent that the appellee claims, then the negotiable warehouse receipts could have been readily transferred by Ellman to the appellee, and the account with the appellant changed from Ellman to the appellee, or both put in their joint names if they had a joint enterprise as appellee indicates. The order was issued so the appellant would recognize the appellee to such extent as Ellman might direct. When Ellman revoked the appellee's authority, the appellant could recognize no one excepting the legal owner of the kegs, Ellman, in whose name the negotiable warehouse receipts were issued, and in whose name the account was at all times carried on the books of the appellant. Appellant delivered, by virtue of Ellman's order of December 27, 1933, to appellee all kegs for which he requested delivery, up to the time of its revocation by Ellman on March 21, 1934. Appellant retained the warehouse receipts after the payment of the notes, but they were at Ellman's disposal.

We find no merit in appellee's contention that the pencil notation on Ellman's order of revocation, dated March 20, 1934, put appellant on notice of appellee's pecuniary interest in the 183 kegs in question. They merely show that the appellee advanced $539.77, and that 200 kegs were delivered to him. These facts were not disputed. Payment by appellee to appellant of Ellman's loans and charges vested in the appellee no property right which would give him a right of action against the appellant. These payments and the conditions under which, and the reasons for which, they were made, were matters solely between the appellee and Ellman, and within their knowledge alone. Appellee's advances for Ellman's account totaled $1,689.90, or at the rate of about $2 per keg. On Ellman's order he withdrew 605 kegs. Ellman received $600. Appellee's

testimony gave the value of the kegs between $5 and $5.50 each.

A careful examination of the evidence leads us to no other conclusion than that the appellant acted properly in recognizing Ellman as the owner of the 183 kegs and as having the right to possession thereof, and that appellant was not liable to appellee. See Klein v. Patterson, 30 Pa. Superior Ct. 495. The appellee had no property in the kegs, general or special, or actual possession, or the right to immediate possession, which are fundamental to his right to maintain an action against the appellant. See Martin v. Megargee, 212 Pa. 558, 61 A. 1023. For the appellee to recover from the appellant in this case, he must have had either a right actually in possession, or a right immediately to take possession; it is not enough that it be merely a right of action, or a right to take possession at some future time, or a right to have taken possession at some time in the past. See Gunzburger v. Rosenthal, 226 Pa. 300, 302, 75 A. 418, 419.

If appellee had any complaint, it was with Ellman and not with the appellant.

The fourth assignment of error is sustained. Judgment of the court below is reversed, and is here entered for the defendant.