Essex Coal Company Appeal.

Argued April 22, 1963. Before BELL, C. J., MUS-
MANNO, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Thomas F. Burke,* with him *Patrick J. Toole, Jr.,*
and *William H. Rivoir, Jr.,* for appellants.

*E. C. Marianelli,* for appellee.

OPINION BY MR. JUSTICE EAGEN, July 2, 1963:

These appeals are from an order of a Pennsylvania
State Mining Commission awarding damages covering
interests in a quantity of coal underlying a tract of
land condemned by the Pennsylvania Turnpike Com-
mission.

The appellant, Essex Coal Company (Essex), was
the owner of the surface and underlying coal of 813
acres of land in Luzerne County. On April 13, 1934,
Essex "granted, demised, leased and to mine let" to
William S. Jermyn and C. E. Banker, in consideration
for certain covenants to be kept by the lessees, all the
coal underneath the 813 acres together with so much
of the surface as was required to carry out the pur-

poses of the lease. The lease was in writing and duly recorded. It gave the lessees the right to mine and remove the coal by any process of mining, and stipulated that the coal and surface rights would continue "for the term of ten (10) years . . . or until the exhaustion of the coal if said exhaustion occurs prior to the end of said term." The agreement specifically prohibited assignment, transfer or subletting without the written consent of Essex.

As part of their covenants, the lessees agreed to pay as rent or royalty for every ton of material removed from the premises the sum of fifty cents. These royalties were payable on the tenth day of each succeeding month. The lessees also agreed to use all diligence in mining and removing the coal and to pay a minimum royalty of $1500 monthly.

By subsequent assignment, the interest of Jermyn in the agreement was transferred to Banker. By written agreement dated March 21, 1944, the term of the agreement was extended for an additional term of ten years in favor of Banker alone. The terms of the original contract were continued; however, the minimum royalty payment requirement was cancelled. By written agreement dated December 16, 1952, the term of the lease was extended until May 1, 1964.

On October 15, 1949, Banker without the express consent of Essex, entered into an agreement with Anthony Gallizzi, giving the latter a license to strip to exhaustion, without time limitation, all of the coal on the demised premises for a specified royalty of seventy-five cents a ton. Essex, through its officers, subsequently gained knowledge of the stripping of coal on its premises by Gallizzi, and entered no objection. From the year 1949 to 1954 inclusive, Essex received from Banker the sum of $327,097.15 in the form of royalty payments which was part of the money originally paid to Banker by Gallizzi.

On January 18, 1954, the Pennsylvania Turnpike Commission condemned a 200 foot wide strip, extending approximately four miles in length across the land involved, for purposes of construction of the Northeastern Extension of the turnpike. As a result, in August 1954, Gallizzi's stripping operations were halted permanently in this area.

On September 25, 1961, Gallizzi petitioned for the convening of a State Mining Commission, in accordance with the provisions of the Act of June 1, 1933, P. L. 1409, as amended, 52 P.S. §1501, to determine the amount and to make an award for the coal required to be left in place under the condemned property for support purposes. Essex and Banker were granted permission to intervene in the proceedings. Banker and Gallizzi subsequently died and the representatives of their respective estates were substituted as party litigants.

At the hearing, all of the interested parties agreed of record that a total of 103,493 tons of coal remaining under the condemned land was necessary to be left in place for lateral and vertical support, and of this total tonnage 3164.8 tons were and had been already uncovered by Gallizzi's operations. It was further agreed that Gallizzi should be paid for this particular coal damages computed at $4.90 a ton with detention money added, or a total sum of $18,764.10 less royalty payments due thereon to Banker.

As to the remaining 99,100 tons required to be left in place, all of the parties in interest agreed that the Turnpike Commission *in full discharge of its liability* should pay damages at the rate of $.225 per ton plus six percent for three and one-half years for detention, or a total sum of $26,978.78. It is the apportionment of this last mentioned sum that is in issue on these appeals.

The commission found that the losses of the parties involved in connection with the coal were as follows:

Essex, fifty cents per ton; Banker, twenty-five cents per ton; Gallizzi, $.9325 per ton.[1] It accordingly awarded 50/168.25 of the total damages or $8,017.52 to Essex; 25/168.25 or $4008.76 to Banker; 93.25/168.-25 or $14,925 to Gallizzi.

The appellants, Essex and Banker, assert that the commission erred in making the last mentioned award to Gallizzi. They contend that Gallizzi had no interest in the coal and that, in any event, the full amount of the $26,978.70 should be paid to Essex. It is our considered conclusion that the order of the commission was correct.

Banker granted to Gallizzi the right to remove all of the coal until exhaustion. Of course, Banker could not grant to Gallizzi an interest or title he did not possess. The basic question for decision, therefore, is the construction and legal significance of the original agreement entered into by Essex, Banker and Jermyn. Under a copious number of prior decisions of this Court, this contract constituted a sale of the coal in place, and vested in the lessees a fee simple title in the subject matter. See, *Caldwell v. Fulton,* 31 Pa. 475 (1858); *Smith v. Glen Alden Coal Co.,* 347 Pa. 290, 32 A. 2d 227 (1943); *Hummel v. McFadden,* 395 Pa. 543, 150 A. 2d 856 (1959), and authorities cited therein.

A lease of coal in place with the right to remove until exhaustion constitutes a sale of an estate in fee simple and the remaining interest of the lessor in the royalties to be paid is personalty, *Smith v. Glen Alden Coal Co.,* supra. While each mining agreement must be judged sui generis and construed by its own terms, if *exclusive* and complete dominion over the coal is granted to the lessee by the instrument involved, this is a sale in place and vests in the lessee a fee: *Hummel*

---

[1] The evidence established that this profit was realized by Gallizzi.

*v. McFadden,* supra. This is the import of the instrument under consideration.

The fact that the instrument is called a "lease" is not material, it is the character of the transaction that is controlling: *D. L. & W. R. R. Co. v. Sanderson,* 109 Pa. 583, 1 A. 394 (1885); *Plummer v. Hillside Coal & Iron Co.,* 160 Pa. 483, 28 A. 853 (1894); *Shenandoah Boro. v. Phila.,* 367 Pa. 180, 79 A. 2d 433 (1951); *Hummel v. McFadden,* supra. Nor is the fact that the minimum royalty payment provision was subsequently cancelled determinative or of great legal significance in view of the legal obligation of the lessees to carry through the mining operations with due diligence, *Hummel v. McFadden,* supra.

Appellants emphasize two factors in the original contract in support of their contention that it was a lease as that term is generally understood and not a sale absolute: (1) The time limitation or the term of years specified; (2) The covenant against assignment. Neither clause changed the basic character of the transaction. This Court has repeatedly ruled that a lease of coal for a limited term of years may still be a grant of an interest in the subject matter. With other conditions being present, such as the right to mine until exhaustion, such an instrument is not a mere license to take the coal but a sale of it, conditioned on its being removed in the time specified: See, *Hope's Appeal,* 1 Sadler 307; *Lazarus's Estate,* 145 Pa. 1, 23 A. 372 (1891); *Lazarus v. L. & W. Coal Co.* 221 Pa. 415, 70 A. 817 (1908); *Smith v. Glen Alden Coal Co.,* supra; *Westbrook Coal Co. v. Hudson Coal Co.,* 352 Pa. 371, 42 A. 2d 825 (1945); *Com. v. Solley,* 384 Pa. 404, 121 A. 2d 169 (1956). Upon the termination of the lease of coal land for a fixed term, the lessor becomes revested with his former estate in whatever coal remains: *Westbrook Coal Co. v. Hudson Coal Co.,* supra.

Neither do we agree that the covenant against assignment is controlling. Since the original contract constituted an absolute sale, this provision is of no consequence. The only interest retained by the lessor was the right to the royalties together with a possibility of reverter, *Smith v. Glen Alden Coal Co.*, supra. Essex could not control the subsequent transfer of that which it did not own. Further, the lessor knew of Gallizzi's operations on the property, allowed them to continue without objection, and even renewed the lease in 1954, approximately five years after they had begun.

The final contention of the appellants that, regardless of Gallizzi's interest, Essex is entitled to receive the full amount of the agreed upon damages for the 99,100 tons of coal involved is not persuasive. As noted before, *the parties themselves stipulated that the full amount* of damages to be paid for this coal by the commission should be $.225 per ton plus detention money or a total of $26,978.98. The basic rate per ton to be paid was by their own agreement less than the royalty Essex was entitled to receive under its lease agreements. Under the established facts, Gallizzi suffered a loss, as well as Essex, when the lease was abrogated by the condemnation. To deny him recovery would be unjust and unconscionable.

The Act of June 1, 1933, supra, authorizing the convening of a State Mining Commission to determine the amount of coal required to be left in place for support of property condemned by the Commonwealth was intended to determine and terminate all interests affected by the condemnation in one proceeding. Having obtained control over the total damages to be paid in this case, it was proper to make distribution upon the basis of equitable principles. See, *Harris's Appeal*, 323 Pa. 124, 186 A. 92 (1936).

Order affirmed.