## Moffett v. Parmar Sand, Inc.

*Robert F. Banks,* for plaintiff.
*Bernard Goldstone,* for defendant.

McKay, J., October 20, 1964.—Plaintiffs, husband and wife, owners as tenants by the entireties of 200 acres of land in South Pymatuning Township,[1] have brought this action in equity to obtain the cancellation of a contract between them and defendant whereby defendant was given the right to remove sand[2] and gravel and other similar material from their land.[3]

---

[1] The land of plaintiffs is described as follows: On the north by land of Catherine Sump, formerly W. R. Sump and land of John Raiti, formerly of John Sift; on the east by Berry Road and land of Fred and Emma Schwartz, C. Ralph Hasenplugh and land of Joseph Miodrog, formerly Lillian Dawes; on the south by Pymatuning Creek, land of Joseph Miodrog and land of George Krivak; on the west by land of Mrs. A. H. Williams, formerly of W. W. Lokey and land of Catherine Sump; said parcel of land containing two hundred (200) acres more or less.

[2] Leases dealing with the extraction of any substance which in its natural state is a part of the land itself, such as sand and gravel, come within the rules of law applicable to coal leases generally: Smith v. Glen Alden Coal Co., 347 Pa. 290, 301, note 3.

[3] The lease in full read as follows: "THIS AGREEMENT entered into this 30th day of March, 1961, between ALLEN A. MOFFET and MATILDA MOFFET, husband and wife, of South Pymatuning Township, Mercer County, Pennsylvania, Parties of the first part; and PARMAR SAND, INC., of the same place, Party of the second part:

"WHEREAS, the said parties of the first part are the owners of a certain farm bounded and described as follows:

"ALL that certain piece or parcel of land situate in South Pymatuning Township, Mercer County, Pennsylvania, bounded and described as follows: On the north by land of Catherine Sump, formerly W. R. Sump and land of John Raiti, formerly of John Sift; on the east by Barry Road and land of Fred and Emma

The background of the entering into the agreement is as follows: Defendant had set up a substantial amount of equipment on nearby land for the removal of sand and gravel and held six leases from the various owners, enough to last them in their operations for a considerable time. The nearest piece so leased was about two miles south of plaintiffs' land. Defendant's purpose in acquiring the rights granted by the lease with plaintiffs was to have reserve material available in case they exhausted the material in their other leaseholds. Also, a witness for defendant testified that he had made test borings on the tract and had found that the sand was finer there than in the other six tracts and more desirable for certain purposes.

Plaintiffs conduct a farm on the 200 acres and ex-

Schwartz, C. Ralph Hasenplugh and land of Joseph Miodrog, formerly Lillian Dawes; on the south by Pymatuning Creek, land of Joseph Miodrog and land of George Krivak; on the west by land of Mrs. A. H. Williams, formerly of W. W. Lokey and land of Catherine Sump; said parcel of land containing two hundred (200) acres more or less; and

"WHEREAS, the party of the second part is desirous to take from said land, sand, gravel and allied materials at various times and in such amounts as it desires.

"NOW, THEREFORE, the following agreement is freely entered into and each intends that this shall constitute a legal and binding agreement and each intends to be bound hereby. The provisions of said agreement are as follows:

"1. That beginning immediately upon the signing of this agreement, the party of the second part shall have the right to take, at any time suitable to it, any or all sand, gravel and allied material on the above described property. It is agreed, however, that during the year 1961, material as above set forth, shall be taken only from the pasture area.

"2. That the portion of the land above described to be worked for sand and gravel will be agreed upon by the parties after January 1, 1962; but first parties must agree upon a plot of at least twenty (20) acres each year.

"3. The party of the second part will pay to the parties of the first part for material taken from the above described premises,

pected to continue to operate the farm for at least some time. This is the reason that they provided that for the first year, only the pasture area would be worked and that thereafter the parties would agree on the particular portion to be worked.

At the time the complaint was filed, January 21, 1963, defendant had not conducted any operations on plaintiffs' land whatever. In February, 1962, as a part of the construction of the Shenango River Reservoir north of Sharpsville, the United States Government condemned the bulk of the land which the defendant had leased on the six pieces above referred to, as well as some of its equipment, as a result of which it was unprofitable for defendant to continue any operations, at least in that vicinity. With the cooperation and consent of the United States District Attorney it sold all its equipment and went out of business.

The present issue was brought to a head on May 28,

---

the sum of Six (6c) cents per ton of raw material, and the said party of the second part shall keep such records and make an accounting to the parties of the first part quarterly so that all materials purchased between January 1 and March 31 of each year will be paid for by the 15th day of April and in like manner, the materials taken in each quarter will be paid for by the 15th of the following month.

"4. It is mutually agreed by and between the parties hereto that no material will be removed within one hundred fifty (150) feet of any building erected on the above premises.

"5. This agreement to continue for ten (10) years from date of signing, but the parties of the second part shall have the right to renew the agreement for an additional term of ten (10) years upon the same terms and conditions.

"IN WITNESS WHEREOF, the parties have hereunto set their hands and seals the day and year first above written.

"/s/ Allen A. Moffett (Seal)
"/s/ Matilda Moffett (Seal)

"Witness:
    "Ralph Pallante
    "Parmar Sand, Inc.
    "per /s/ Paul R. Parker (Seal)"

1963, when the attorney for plaintiffs wrote to the attorney for defendant, stating that since defendant had not removed any sand or gravel, it had broken its contract, and that plaintiffs therefore rescinded and cancelled the agreement,[4] that plaintiffs exercised their right of reentry; that defendant should stay off the premises and that unless plaintiffs heard from defendant to the contrary within 10 days, they would assume that defendant agreed to "this rescission and cancellation."

The attorney for defendant promptly replied by letter of June 3rd that it was unable to develop plaintiffs' property because of the government condemnation; that it did not recognize the cancellation; that it had an interest in plaintiffs' property growing out of the aforesaid contract, and that if the government condemned plaintiffs' property as a part of the reservoir project, as was then contemplated, it would claim damages for its proportionate interest in the 200 acres.

After further rebuttal and surrebuttal by correspondence, the present suit was instituted, the pleadings reflecting the above facts, including the correspondence.

At the trial it was stipulated that of the 200 acres owned by plaintiffs, 120 are within the basic, ultimate, plan of the reservoir, that is, are expected to be condemned by the government, but that they have not as yet been actually condemned.

It is the position of plaintiffs that the lease dated March 30, 1961, constituted a contract whereby defendant bound itself to remove sand and gravel from the premises at the rate of at least 20 acres per year; that there was an implied agreement to proceed with due diligence to comply with that obligation; and that by failing to do so, and especially by notifying plain-

---

[4] The original cancellation was by telegram; the letter confirmed it.

tiffs that it had gone out of business, it had breached its contract, whereby the rescission and cancellation of the contract should now be decreed by the court.

Defendant contends that plaintiffs' remedy, if any, is at law rather than in equity; that the lease imposed no obligation upon it, defendant, to remove the sand and gravel at any particular time during the term, 10 years, of the agreement and its renewal, an additional 10 years; that by the lease, defendant acquired an estate in fee simple in the 200 acres for the period of the lease without obligation to extract any sand or gravel from it; and that even if it had any obligation to remove the material, it was impossible for it to perform such obligation because of the government condemnation of a substantial part of the land leased by defendant in the area, as well as the equipment of defendant; and that defendant had had to shut its plant down in February of 1962.

In addition to the facts which we have heretofore set forth [5] and which, in our opinion, are sufficient to determine the controversy, we make the following findings of fact at the specific request of the parties.

1. Since the execution of the agreement, plaintiffs have not transferred any interest in the said 200 acres.

2. The correspondence leading up to the action was between attorneys for the respective parties, but said attorneys had full authority to represent their clients therein.

3. Defendant wound up its business and finally terminated all of its activities on March 1, 1962.

4. Prior to February 14, 1962, defendant was engaged in the business of extracting sand and gravel from 4 of the 6 tracts for which it held leases and thereafter of processing the same for concrete and blacktop materials. Defendant's processing plant con-

---

[5] These facts, as well as the following formal findings, are of course all subject to exception by the respective parties.

sisted of raw material beds, sand classifiers, dehydraters, conveyor belts, presses and screens.

5. The United States condemned the six tracts on February 14, 1962.

6. Defendant's processing plant was located upon land not condemned by the United States.

7. Defendant has dismantled its plant, sold the company, ceased its operation, wound up its business, and is in fact out of business.

8. Plaintiffs did not during 1963 demand of defendant that it come on its land and extract any sand, gravel or allied material from the 200 acre tract.

9. When defendant executed its agreement with plaintiffs, defendant anticipated enlarging its operation as time went on, and it needed plaintiffs' tract covered by said agreement for reserve materials.

10. Plaintiffs never demanded that defendant agree to any specific 20 acre tract from which material was to be removed for the year 1962 or at any subsequent time.

The other requested findings of fact of the respective parties are refused, either because they have already been incorporated in our preliminary summary of facts, because they are not established by the evidence, or because they are irrelevant and immaterial to the issues in the case.

## DISCUSSION

One of the points raised by defendant is that equity does not have jurisdiction in that plaintiffs have an adequate remedy at law. This question was raised belatedly, no preliminary objection having been pressed on that ground. Accordingly, it has been waived: Pennsylvania Rule of Civil Procedure 1509 (c). But beyond that, the court has heard the testimony, requests for findings and conclusions have been filed, and, in our judgment, the parties are entitled to have their problem resolved by the court at this time.

In determining the law that is applicable to the present case, our first duty is to construe the intent of the parties as set forth in the agreement dated March 30, 1961.

It is well established that a sale or lease of all the coal under certain land in place amounts to a conveyance of the fee in the coal with the right to remove it, provided *there is an agreement,* express or implied, in the lessee to carry through the mining operations with due diligence or to pay for the coal even if he doesn't remove it: Hummel v. McFadden, 395 Pa. 543; Essex Coal Co. Appeal, 411 Pa. 618.

However, not all coal mining agreements are such conveyances in fee of the coal. Each mining agreement must be judged sui generis in order to determine the extent to which the parties have bargained: Smith v. Glen Alden Coal Co., 347 Pa. 290. A contract regarding coal may be a sale absolute, a conditional sale, a lease in the ordinary acceptance of that term or a mere license to mine and remove the minerals; its legal effect must be determined in the light of the language used: Girard Trust Co. v. Delaware and Hudson Co., 246 Pa. 161; Hummel v. McFadden, supra.

With these rules of law in mind, let us scrutinize the agreement before us. It will be noted that the "whereas" clause stated that the defendant desired to remove sand and gravel from plaintiffs' land at various times, but only *at such times* and *in such amounts as it,* the defendant, *desired.* The agreement then gives the defendant the right to remove *"any* or all" sand and gravel on the land at "any time suitable to it," with certain provisions relating to details. The word "any" sand and gravel means some or none at all, at defendant's election, as do the words, "in such amounts as it (defendant) desires." Similarly, the words "at any time suitable to it" gives defendant the election as to the time of removing the materials. All of these

terms necessarily negative the possibility of implying any agreement on the part of defendant to proceed with due diligence to remove the sand and gravel.

The agreement merely boils down to this: That defendant has an option or license, if and to the extent that it desires, to remove any, all or no sand and gravel at all from plaintiffs' land during the term of the lease or its extension, but if it does remove any, it must comply with the limitations set forth in the option.

It follows that this contract, lacking as it does an express or implied agreement to proceed with due diligence, and clearly indicating on its face that the defendant had the privilege to decide, at its exclusive option, whether or not to remove any sand or gravel at all during the term of the lease, is not a sale of sand and gravel in place and conveys no interest in the land to defendant whatever.

Since this is not a sale of the sand and gravel in place, and the defendant has no property right in plaintiffs' acreage if, as is expected, a portion of the 200 acres is subsequently condemned by the United States Government, defendant is not entitled to any of the damages payable as a result of such condemnation: West v. Peoples First National Bank & Trust, 378 Pa. 275, 285.

It likewise follows that this court cannot either rescind or cancel the lease which the parties have made. A rescission of course is an act of one or both parties themselves. The court has no concern with that. A cancellation is inappropriate, for the lease still has several years to run; it has not been breached by either party; none of the tract has been condemned and it is not even expected that all of it will be condemned by the government. While at the present time the defendant is out of business, for whatever reason, it still has the right during the balance of the term of the lease or its renewal, if renewed, to re-enter business and exercise

its prerogatives under the lease for any portion of the tract that has not been condemned. In view of these considerations, a court cannot cancel the lease.

Accordingly, we make the following conclusions of law.

1. This court has jurisdiction in equity over this action.

2. There was no implied covenant in the said agreement on the part of defendant to proceed with its mining operations with due diligence and no particular time limit, express or implied, during which the defendant was required to remove the materials.

3. The agreement between the plaintiffs and the defendant dated March 30, 1961, did not create any estate in the land of plaintiffs in favor of defendant and was not a sale of the sand, gravel and allied materials in place.

4. The agreement was a mere license or option.

5. The said lease agreement dated March 30, 1961, is still in effect between the parties.

6. In the event that any portion of plaintiffs' said tract is subsequently condemned by the United States Government, the defendant has no right to share in the damages awarded pursuant thereto.

7. Plaintiffs' complaint should be dismissed and judgment entered in favor of defendant, the costs of this proceeding to be shared equally by the parties.

### DECREE NISI

Now, October 20, 1964, it is ordered and decreed that the complaint filed in the above entitled case be dismissed and judgment entered for defendant, the costs to be borne equally by the parties. It is further ordered and decreed that unless exceptions are filed hereto within 20 days from the date of notice of the filing hereof, this decree shall become final.