426 A.2d 1175

POTTS RUN COAL COMPANY,

v.

BENJAMIN COAL COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed March 6, 1981.

Petition for Allowance of Appeal June 2, 1981.

John M. Elliott, Philadelphia, for appellant.

Joseph Colavecchi, Clearfield, for appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

LIPEZ, Judge:

In this case we are called upon to determine whether, under the facts presented, the grantor of the right to mine coal and clay to exhaustion may maintain actions for trespass to land and conversion with regard to the coal and clay so conveyed. We hold it cannot.

The basic facts appear to be undisputed. Appellant Benjamin Coal Company is the ultimate assignee of the rights to mine coal and clay granted under a "lease agreement" executed by appellee Potts Run Coal Company as lessor. This agreement purported to convey to John L. Davis the right to mine until exhaustion, by any process of mining, all the merchantable and mineable coal and clay in certain tracts owned by Potts Run, for a period of three (3) years, and for successive one (1) year terms thereafter.[1]  The lease

1. This agreement granted to the lessee, *inter alia*, the option to "lease, take and hire from the Lessor for a term and at the rentals and upon the covenants, conditions, limitations and agreements herein contained, the right to mine and remove by the surface strip or open pit and by deep or underground mining methods, for his own use and benefit, all the merchantable and mineable coal and clay in, under and upon those certain tracts of land situate in Knox Township, Clearfield County, Pennsylvania, bounded and described as set forth in the schedule, hereto attached . . . .

Together with such rights of ingress, egress and regress in, under and upon the leased premises and also together with the mining rights and release of damages as are contained in the various deeds, or other instruments, under which the Lessor takes title to the leased premises; also together with the right to use all practical methods now in use or which may hereafter be used and use of improved machinery and appliances for surface strip or deep mining operations; all, however, to the extent of the Lessor's right and title only, and for the coal, clay and surface where owned by the Lessor and for any injury done to the mining rights of the Lessor, directly or indirectly, the monies hereinafter agreed to be paid by the Lessee to the Lessor shall be full and sufficient settlement and payment and the payment of said monies shall operate as a full and complete release and discharge of the Lessee for all such injury and damage resulting from the mining and removal of coal and clay or from the exercise of any of the rights herein granted to the Lessee, whether such injury or damage shall be direct or consequential."

Article II of the agreement states, in part, that "[t]he option to lease herein granted the Lessee shall be exercised within three (3) months from the date hereof unless the time be extended by the Lessor by an agreement in writing to this effect.  The term of the lease shall begin on the date of the exercising of the option, which shall be in writing addressed and mailed to the Lessor at the address herein stated, and shall continue thereafter in full force and effect for a period of three (3) years and at the end of this initial term, the Lessee not being in default of any of the terms, covenants and conditions herein set forth, shall have the right to renew the lease under the same terms and conditions for a further term of one (1) year and thereafter for successive one (1) year terms until the exhaustion of all merchantable and mineable coal and clay in or

agreement contained a clause prohibiting the sale, assignment or transfer of the lease without the written consent of Potts Run.[2] Potts Run later consented in writing to the assignment of the lease to Empire Coal Company. Thereafter, appellant Benjamin purchased all the outstanding stock and assets of Empire including the rights under the lease agreement. The written consent of Potts Run to this transaction was not obtained. Potts Run thereupon notified Empire that the assignment to Benjamin violated the anti-assignment clause of the lease agreement and that mining operations should cease immediately. Nevertheless, Benjamin continued to remove the coal and clay from the tracts it had acquired from Empire.

In the present action, which is brought against Benjamin as the sole defendant, Potts Run seeks damages for trespass to land and conversion of minerals. After the pleadings were closed and discovery had been taken, Benjamin sought summary judgment as to both claims on the theory, *inter alia*, that Potts Run lacked standing to bring the actions. This appeal arises from the lower court's order denying summary judgment.[3]

> under the leased premises, at which time this lease shall cease, determine and end, subject, nevertheless, to prior termination thereof by default of the Lessee in the observance and performance of any of the covenants, conditions and agreements thereof or any of them.
>
> It is understood and agreed that the Lessee, having exercised the option herein granted and the lease having become effective in accordance with the terms hereof, shall have the right to cancel and terminate the same at the end of any term, whether initial or renewal, upon giving sixty (60) days written notice to the Lessor."

**2.** Article III, Section 15 of the agreement states:
> The Lessee shall not have the right to sell, assign, transfer or set over this lease or any part thereof, or sublet the same, or any part thereof, without the consent of the Lessor in writing first had and obtained.

**3.** The lower court certified that its order involved a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order would materially advance the ultimate termination of the litigation. Benjamin's Petition for Permission to Appeal pursuant to Pa.R.A.P. 1311 and 42 Pa.C.S.A. § 702 was granted by this court on August 8, 1979 (No. 1100 Miscellaneous Docket).

The lower court held that the original agreement, although titled a "lease," effected a sale in fee of Potts Run's interest in the described coal and clay. This conclusion is in accord with the established rule in Pennsylvania, *Essex Coal Co. Appeal*, 411 Pa. 618, 192 A.2d 675 (1963), *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227 (1943), and apparently is not disputed by the parties. The lower court concluded that the interest conveyed by the original agreement "was a fee simple defeasible, subject to: (1) a special limitation (exhaustion of the coal and clay); and, (2) a condition subsequent (assignment without written consent)." Slip Opinion at 10. Despite the fact that Potts Run has never declared a forfeiture under the agreement nor sought to perfect its interest in the property through ejectment or otherwise, the lower court held that Potts Run's "power of termination after breach of condition subsequent is a future interest in land sufficient to sustain this action in trespass." Slip Opinion at 11.

■ Benjamin argues on appeal that the order of the lower court was in error in that an unperfected right of re-entry (power of termination) is insufficient to infuse Potts Run with standing to bring the present action, and that, therefore, summary judgment should have been granted as a matter of law. We agree.[4]

The nature and incidents of a grantor's interest in merchantable and mineable coal and clay in which the right to mine to exhaustion has been conveyed away was extensively discussed by the Supreme Court in *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227 (1943). *Smith* reiterates the established rule that:

> a lease of coal in place, such as this is, 'until such time as all the available merchantable coal shall have been mined and removed,' *is a sale of an estate in fee simple* and leaves the lessor with only an interest in the royalties to be paid him under that lease. That interest is personalty.

4. It is, therefore, unnecessary to discuss Benjamin's remaining point that the anti-assignment clause is unenforceable as a matter of law.

347 Pa. 290, 298–299, 32 A.2d 227, 232. *See also, Blair v. Shannon*, 349 Pa. 550, 37 A.2d 563 (1944); *Hosack v. Crill*, 204 Pa. 97, 53 A. 640 (1902). Under the rule as stated in *Smith*, Potts Run was conveyed away its entire estate in the merchantable and mineable coal and clay and received in return personal property in the form of a right to receive royalty payments. After Potts Run delivered the lease its interest in the described coal and clay was "*a possibility of reverter*, and this 'is not an estate present or future, but merely a possibility of having a future estate' . . . . [Even the grantor's] future interest in the mined out area after the exhaustion of the coal was not an estate in the mineral itself." *Smith, supra*, 347 Pa. at 302–303, 32 A.2d 227. Thus, under the terms of the lease agreement, Potts Run received a possibility of reverter in the nature of a contingent right of entry upon condition broken.[5]  Potts Run's

5. A right of entry upon condition broken is often referred to as a "power of termination." See, *Restatement of Property, Future Interests*, § 24 Comment (b) (1936). In addition, rights of entry or powers of termination have at times been defined as subclassifications of the possibility of reverter, See, e. g., *Annotation*, 77 *ALR* 344, 345; *Smith, supra.* This mixing of termination may lead to some confusion since the term "possibility of reverter" is more properly used to refer to the interest which arises out of the creation of a determinable fee. *See Restatement of Property, Future Interests*, § 154. The distinction between a right of entry for a breach of condition subsequent and a possibility of reverter created by a determinable fee is important in the present case because "in the former, the estate in fee does not terminate until entry by the person having the right, while, in the latter, the estate reverts at once on the occurrence of the event by which it is limited." *28 Am. Jur. 2d, Estates*, § 184 (at 323). The use of the term "reverter" in connection with a right of entry appears to be a misnomer. As pointed out by one commentator, the expression revert "signifies a return to the grantor of ownership or possession by the operation of law, and is not properly applicable to his reacquisition of the ownership or possession by entry or its equivalent." *Tiffany on Real Property*, § 132, quoted at 77 *ALR*, 344, 345. The American Law Institute in the *Restatement of Property, Future Interests* (1936) takes a well-reasoned approach by distinguishing between the "possibility of reverter" (defined in § 154(3) as "any reversionary interest which is subject to a condition precedent"), and the "power of termination" (defined in § 155 as the future interest created in the transferor by a transfer of an estate in land subject to a condition subsequent). In *Smith, supra*, as in the present case, the lessor's interest upon breach of a condition of the

possession of this unexercised right of entry does not, however, create for it any estate in the coal and clay.

'Where an estate in land is granted, whether for years, for life, or in fee, the existence of a condition subsequent in no way lessens the quantity of the estate granted. The grantor is divested of the entire estate of the term or the fee, and the grantee is invested with the same estate. The effect of the condition is simply that, if a breach shall occur, the grantor shall have a right to re-enter and thereby become revested with his former estate. Before breach this is regarded as a mere possibility, coupled with no interest in the land ... After breach of the condition, what was before a mere possibility becomes a right to secure a revesting of the former estate by entry, or by action at law. *Until such entry or action the quantity of the estate of the grantee is still unimpaired. If the right of entry is never exercised, the estate remains as before.*'

*Smith, supra,* 347 Pa. at 300, 32 A.2d 227 (emphasis added) quoting *Bouvier v. Baltimore & N. Y. Ry. Co.,* 67 N.J.L. 282, 60 L.R.A. at pg. 764. *See also, 28 Am. Jur. 2d,* Estates, § 160.

Potts Run's interest in the merchantable and mineable coal and clay is thus not an estate in land, present or future, but is, instead, a possibility of obtaining a future estate in the minerals. *Smith, supra,* 347 Pa. at 302, 32 A.2d 227. Potts Run's interests under the lease may be described as personal property in the form of a right to royalties, and a contingent right of entry upon condition broken. *Essex Coal Company Appeal,* 411 Pa. 618, 192 A.2d 675 (1963); *Walter Estate,* 437 Pa. 544, 265 A.2d 368 (1970). Neither of these interests constitute an estate in land. *Smith, supra,* 347 Pa. at 302, 32 A.2d 227. Nor does the existence of the right of entry create any possessory interest in Potts Run.[6]

lease would be best described as a right of entry (power of termination).

6. An action in trespass is the proper form of action for unlawful interference with interests in real property. *See 1 Standard Pennsylvania Practice* 490. It lies for an injury to a *reversionary interest,*

"If the right of entry is never exercised, the estate remains as before. The grantee still has possession with all the advantages which, by the common law, belong to possession." *28 Am. Jur. 2d*, Estates, § 162, at 288; *see also, Restatement, Property* § 57. In the present case Potts Run has not consummated forfeiture nor otherwise sought to obtain possession. The present action seeks damages, not possession.

It is, of course, well established that, in order to maintain an action for trespass to land, a plaintiff must have been in possession, either actual or constructive, at the time the trespass was committed. *Griffin v. Delaware & Hudson Co.*, 257 Pa. 432, 437–38, 101 A. 750, 752 (1917); *Humes Exec., Appellant v. Kramer*, 286 Pa. 251, 133 A. 262 (1926); *Roncace v. Welsh*, 141 Pa.Super. 170, 14 A.2d 616 (1940). In the present case Potts Run has neither possession, nor any estate in the minerals upon which to predicate a right to possession.

The situations is similar in regards to the conversion claim. A plaintiff must have either actual or constructive possession, or the right to immediate possession at the time of the conversion. *Gunzburger v. Rosenthal*, 226 Pa. 300, 75 A. 418 (1910); *Levy v. Terminal Warehouse Co., Appellant*, 121 Pa.Super. 95, 183 A. 102 (1936); *See also, 89 C. J. S.* Trover and Conversion § 3 *et seq.*; 18 *Am. Jur. 2d*, Conversion § 53 *et seq.* Again, Potts Run has neither a possessory interest, nor any ownership interest in the coal and clay, but only the possibility of obtaining an interest. *Smith, supra; Essex, supra.* Potts Run has no right to *immediate* possession but has only a *contingent* right in the nature of a possibility. *Smith, supra; Essex, supra.* Until that contin-

---

*Logan v. Pennsylvania Tel. Co.*, 40 Pa.Super. 644 (1909). However, when "a transferor completely parts with a specified interest, but provides that upon breach of a condition subsequent, he, the transferor, may retake the interest so transferred, this optional power is regarded as a new creation rather than as part of the transferor's original interest left in him." [*Restatement, Property, Future Interests*, § 154 Comment, at 526.] Hence a power of termination is not a reversionary interest.

gency is cleared and Potts Run's right to possession perfected and made immediate, it cannot maintain its present actions. *See Prosser, Law of Torts* (2d Edition 1971) 93–97; 37 *P. L. E.* Trespass §§ 26, 102; 31 *C. J. S. Estates* § 105 at 205.

Because there are no genuine issues of material fact and Benjamin is entitled to judgment as a matter of law, the lower court erred in refusing to grant the motion for summary judgment. *See* Pa.R.C.P. No. 1035.

Order reversed and judgment entered for appellant.