Eugene W. Scherich, : 
     Appellant : 
          : 
    v.     : 
          : 
Greene County Board  :  No. 1878 C.D. 2017
of Assessment    :  Argued: October 16, 2018


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE ANNE E. COVEY, Judge
     HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY       FILED: November 7, 2018


    Eugene W. Scherich (Scherich) appeals from the Greene County (County) Common Pleas Court's (trial court) April 21, 2017 and November 30, 2017 orders dismissing Scherich's appeals from coal land tax assessments. Scherich raises two issues for this Court's review: (1) whether Scherich should be permitted to appeal from the tax assessments for tax years 2010 through 2014 and, in particular, raise the County Assessment Office's (Assessment Office) failure to comply with the statutory notice requirements, illegal spot assessment, and improper valuation; and (2) whether Scherich should similarly be permitted to appeal from the 2015 tax year assessment. After review, we affirm.

    Scherich is a businessperson who purchases real estate and mineral rights. He owns several parcels of land in Greene and Washington Counties. At some point before 2009, Scherich became the record owner of two tracts of land which contained coal – Account Number 24-030005 – 4,704 acres in Washington Township (Washington Township Tract), and Account Number 07-030008 - 412

acres in Franklin Township (Franklin Township Tract) (collectively, Tracts). Both townships are part of the Central Greene School District, located in the County.

On February 3, 2009, Scherich entered into a coal and methane lease (Lease) with Pennsylvania Land Holdings Corporation (PaLHC) for the Tracts. The Lease provided that PaLHC had the right to mine the Tracts for coal for 15 years, which term could be extended for as long as coal or methane was produced or PaLHC paid the minimum advance annual royalty. According to Section 11 of the Lease (Section 11), PaLHC was to pay all the *ad valorem* taxes on any assessments to the Tracts, as well as any tax increases. Section 11 further provided that PaLHC and Scherich could contest tax assessments.

Also on February 3, 2009, Scherich and PaLHC executed a memorandum of Coal and Methane Lease (Lease Memorandum) which was recorded with the Recorder of Deeds on July 23, 2009. The Lease Memorandum reflected that the Lease permitted PaLHC to mine the coal to exhaustion. Scherich provided Section 11 to the County's (now former) chief assessor John Frazier (Frazier) and informed him that, pursuant to the Lease, he was no longer responsible for paying taxes on the Tracts.[1] Although Scherich did not complete a change of address form, because PaLHC was responsible for paying the taxes under the Lease, the Assessment Office listed Scherich as owner, but modified his address to "in care of [PaLHC], 158 Portal Road, P.O. Box 1020, Waynesburg, PA 15370." Trial Ct. Memorandum Op., November 30, 2017, at 2. Thereafter, the Assessment Office sent all tax notices, including bills and assessment changes, to Scherich in care of PaLHC.

On August 24, 2010, the Assessment Office prepared Memos for Assessment Correction or Field Check (Memos) referencing the Tracts. *See*

---

[1] Frazier testified that Scherich told him "I'm not responsible for the taxes anymore[.] [R]ight here's the lease that says taxes are the responsibility of [PaLHC]." Reproduced Record at 265a.

2

Reproduced Record (R.R.) at 118a, 142a. After consulting with the County's consultant on mineral values, Frazier increased the Washington Township Tract assessment from $65.00 per acre ($305,760.00 total) to $1,400.00 per acre ($6,585,600.00 total), and raised the Franklin Township Tract assessment from $75.00 per acre ($30,900.00 total) to $1,400.00 per acre ($576,800.00 total). The assessed values became effective for tax year 2011. The Memos reflected that the new assessed values were entered into the County's official ledger on September 1, 2010. On September 3, 2010, the Assessment Office sent Change of Assessed Value Notices for the Tracts to Scherich, in care of PaLHC at PaLHC's address. PaLHC did not object to the reassessment. Rather, pursuant to the Lease, PaLHC paid county, township and school taxes for the years 2011 through 2014, and county and township, but not school, taxes for 2015. On June 12, 2013, PaLHC terminated the Lease, but continued to pay the taxes. Neither PaLHC nor Scherich notified the Assessment Office that PaLHC had terminated the Lease. In 2015, PaLHC sent the school tax notices to Scherich, who, on August 24, 2015, appealed from the 2011, 2012, 2013, 2014, 2015 and 2016 assessments to the County Board of Assessment Appeals (Board). The Board reinstated the pre-2011 assessment values for 2016 and thereafter. *See* R.R. at 107a, 139a.

On November 23, 2015, Scherich filed a complaint in the trial court alleging that, on August 24, 2010, the Assessment Office's Memos changed the Tracts' assessments. He further averred that the Assessment Office did not send him an assessment change notice, and that such failure constituted an administrative breakdown and violated the notice requirements of the Consolidated County Assessment Law (CCAL)[2] and the Second Class County Assessment Law

---

[2] 53 Pa.C.S. §§ 8801-8868.

(Assessment Law), Act of June 21, 1939, P.L. 626, *as amended*, 72 P.S. §§ 5452.1-5452.20.[3]

The Board filed an answer to the complaint, wherein it denied that Memos were issued and further responded that notices were sent to Scherich in care of PaLHC "pursuant to the document and information provided to the [County]." R.R. at 24a. The Board also raised new matter alleging that the taxes for the years 2011 through 2015 were paid in full without objection and no appeals were taken; that Scherich is time-barred from challenging those assessments; that Scherich did not pay the taxes and was not aggrieved and, thus, has no standing to challenge the assessment and levied taxes; and that Scherich failed to name the school district as a necessary party. On October 31, 2016, the Board filed a motion to dismiss the complaint (Motion). On April 21, 2017, the trial court granted the Motion with respect to tax years 2011 through 2014 because PaLHC paid the taxes for those years. On July 18, 2017, the trial court conducted a hearing on the 2015 tax assessments, and, on November 30, 2017, dismissed Scherich's complaint. On December 22, 2017, Scherich appealed to this Court.[4]

Scherich first argues that the trial court erred by dismissing the action because the Assessment Office failed to comply with Section 8844 of the CCAL, 53

---

[3] Because Scherich's brief to this Court does not present any argument regarding the Assessment Law, that matter is waived, and we will consider this matter relative to only the CCAL. *In re Tax Claim Bureau of Lehigh Cty. 2012 Judicial Tax Sale*, 107 A.3d 853, 857 n.5 (Pa. Cmwlth. 2015) ("A party's failure to develop an issue in the argument section of its brief constitutes waiver of the issue.").

[4]     [This Court's] scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion or committed an error of law and whether the decision is supported by the requisite evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Norwegian Twp. v. Schuylkill Cty. Bd. of Assessment Appeals*, 74 A.3d 1124, 1128 n.3 (Pa. Cmwlth. 2013) (citation omitted).

Pa.C.S. § 8844, concerning notice, and an assessment change without such notice is void *ab initio*.[5]

Section 8844(a) of the CCAL provides in relevant part: "The county assessment office shall mail to each **record property owner**, at the **last known address of the record property owner**, and to the affected taxing districts notice of any change in assessment or new assessment made pursuant to [S]ection 8841(c) [of the CCAL] (relating to assessment roll and interim revisions)." 53 Pa.C.S. § 8844(a) (emphasis added).[6] Section 8844(b) of the CCAL states, in pertinent part:

> The notice shall be mailed within five days from the date the county assessment office makes the change or addition to its official records. The notice shall state that any persons aggrieved by the assessment and the affected taxing districts may file an appeal to the [B]oard within 40 days of the date of the notice.

53 Pa.C.S. § 8844(b). Section 8844(c)(1) of the CCAL provides in relevant part:

> Any person aggrieved by any assessment, whether or not the value thereof shall have been changed since the preceding annual assessment, or any taxing district having an interest in the assessment, may appeal to the [B]oard for relief. Any person or taxing district desiring to make an appeal shall, on or before September 1 or the date designated by the county commissioners if the option under paragraph (3) [(pertaining to a date designated by the

___

[5] Regarding Scherich's assertion that such failure renders the assessments void *ab initio*, Section 8845 of the CCAL states: "No defect in service of any notice shall be sufficient grounds for setting any assessment aside, but, upon proof of defective notice, the aggrieved party or taxing district shall have the right to a hearing before the [B]oard." 53 Pa.C.S. § 8845. Thus, pursuant to Section 8845 of the CCAL, if the Assessment Office failed to comply with Section 8844(a) and (b) of the CCAL, Scherich was entitled to a hearing. Accordingly, the assessments were not void *ab initio*.

[6] Section 8841(a) of the CCAL, 53 Pa.C.S. § 8841(a), requires a county assessment office to prepare and submit to the assessment board an assessment roll of property subject to and exempted from local taxation. Section 8841(b) of the CCAL, 53 Pa.C.S. § 8841(b), mandates that the assessment roll include the name of the last known owner of record, the parcel's location, each parcel's assessment and the assessed value of improvements, the aggregate assessments for each municipality and the assessment of all exempted parcels.

county commissioners)] is exercised, file with the [B]oard an appeal in writing . . . .

53 Pa.C.S. § 8844(c)(1).

Accordingly, a record property owner whose property's assessment has changed is entitled to notice sent to his last known address within five days of the official record change, and has forty days to appeal to the Board therefrom. *See* 53 Pa.C.S. § 8844(a),(b). Further, under Section 8844(c)(1) of the CCAL, persons aggrieved by assessments may appeal to the Board on or before September 1 of the year preceding the year of the challenged assessment.

Critical to Scherich's argument that he was entitled to notice under Section 8844(a) of the CCAL is that it mandates notice be given to the "record property owner" at the "the last known address of the record property owner." 53 Pa.C.S. § 8844(a). On February 3, 2009, Scherich entered into the Lease which effectively authorized PaLHC to mine the coal to exhaustion. On July 23, 2009, the Lease Memorandum was recorded. On June 12, 2013, PaLHC terminated the Lease, but continued to pay taxes through 2015, except the 2015 school taxes.

The Pennsylvania Supreme Court has explained:

A lease of coal in place with the right to remove until exhaustion constitutes a sale of an estate in fee simple and the remaining interest of the lessor in the royalties to be paid is personalty[.] While each mining agreement must be judged sui generis and construed by its own terms, if exclusive and complete dominion over the coal is granted to the lessee by the instrument involved, this is a sale in place and vests in the lessee a fee[.] This is the import of the instrument under consideration.

The fact that the instrument is called a 'lease' is not material, it is the character of the transaction that is controlling[.] Nor is the fact that the minimum royalty payment provision was subsequently cancelled determinative or of great legal significance in view of the

6

legal obligation of the lessees to carry through the mining operations with due diligence[.]

. . . . This Court has repeatedly ruled that a lease of coal for a limited term of years may still be a grant of an interest in the subject matter. With other conditions being present, such as the right to mine until exhaustion, such an instrument is not a mere license to take the coal but a sale of it, conditioned on its being removed in the time specified. Upon the termination of the lease of coal land for a fixed term, the lessor becomes revested with his former estate in whatever coal remains[.]

*In re Essex Coal Co.*, 192 A.2d 675, 678-79 (Pa. 1963) (citations omitted); *see also Potts Run Coal Co. v. Benjamin Coal Co.*, 426 A.2d 1175 (Pa. Super. 1981).

The Pennsylvania Supreme Court has distinguished between the record property owner, and the actual owner:

In general, taxes are determined by ownership. It has long been the policy of the law that the real owner should be taxed. The actual owner, who is not the record owner, may be assessed unless exempt from taxation. The actual owner of the realty, whether registered or not, is liable for the taxes. The right of the taxing authority to collect unpaid taxes from the registered owner is not exclusive and may be exercised against the real or beneficial owner.

*Appeals of Baltimore & O. R. R.*, 175 A.2d 841, 844 (Pa. 1961) (citations omitted).

Based on the Lease terms – the Tracts were subject to the Lease, Scherich was not responsible for paying taxes during the Lease term, and PaLHC could mine the coal to exhaustion – the Lease "constitute[d] a sale of an estate in fee simple and [Scherich's] remaining interest . . . in the royalties to be paid [was] personalty[.]" *Essex Coal*, 192 A.2d at 678. Therefore, once the Lease was executed, Scherich was no longer the Tracts' actual owner.

Notwithstanding, Section 8844(a) of the CCAL requires notice to each "**record** property owner," which Scherich was, because the Tracts' deeds remained in his name. 53 Pa.C.S. § 8844(a) (emphasis added). Thus, although Scherich was not

7

the Tracts' actual owner,[7] he was nevertheless statutorily required to receive assessment notices[8] in accordance with Section 8844(a) and (b) of the CCAL.[9] The Assessment Office did send the notices to Scherich, but to PaLHC's address. Accordingly, this Court will consider whether the notices were sent to Scherich at the proper address.

Importantly, Scherich informed the Assessment Office that PaLHC was responsible for the taxes (*i.e*, pursuant to the Lease, PaLHC was paying the taxes on Scherich's behalf) and provided Frazier with the relevant Lease provision regarding PaLHC's tax payment obligation. Based thereon, the Assessment Office modified its records to reflect that notices should be sent in Scherich's name, in care of PaLHC at PaLHC's address specified in the Lease Memorandum. Scherich was aware that PaLHC was required to pay the taxes during the Lease term, and there is no record

---

[7] Notably, Scherich previously litigated his ownership under the Lease in a separate, related action. In *Scherich v. Blandford*, (Greene Cty. C.P., A.D. No. 897, 2011, filed November 21, 2012) (*Scherich I*), Scherich filed a complaint to quiet title in the Tracts as against defendants who were extracting methane therefrom. The defendants filed preliminary objections alleging, in part, that Scherich lacked standing because he had conveyed away his interests in the Tracts when he executed the subject Lease. On November 21, 2012, the trial court sustained the relevant preliminary objection and dismissed Scherich's complaint. The trial court concluded: "Because [Scherich] conveyed all his interest in the coal to PaLHC and because his only right under [the Lease] is to receive periodic cash payments, his interest is personalty only, and therefore, an action to quiet title will not lie." *Scherich I*, Trial Ct. Op. at 8.

[8] Although Scherich contends that the Lease provision permitting both him and PaLHC to contest any tax or tax assessment supports his claim that he had a right to notice, the provision does not alter this Court's conclusion that Scherich was no longer the Tracts' actual owner. Instead, the language merely suggests that Scherich could be aggrieved by a tax or tax assessment on the Tracts.

[9] Scherich contends that, because the September 3, 2010 notices were not mailed within five days of the August 24, 2010 Memos, they were untimely. Scherich relies on the current chief assessor's testimony that the tax assessment change occurred on August 24, 2010. Section 8844(b) of the CCAL requires that notice be mailed "within five days from the date the county assessment office **makes the change** or addition **to its official records**." 53 Pa.C.S. § 8844(b) (emphasis added). Although the August 24, 2010 Memos describe the tax assessment change, and the testimony reflects that it occurred on August 24, 2010, it appears that the change was made to the County's "official records" on September 1, 2010, when the official ledger was updated. 53 Pa.C.S. § 8844(b). The notices were issued two days later. Accordingly, the notices were timely mailed.

8

evidence that, during the approximate five-year interim period, Scherich ever inquired about not receiving tax notices at his home address or notified the Assessment Office that he wished to receive such, even after the PaLHC terminated the Lease on June 12, 2013. **In fact, it is clear from Scherich's testimony that he had no expectation of receiving tax notices at his address, since PaLHC was responsible for paying the taxes.** *See* R.R. at 308a. For these reasons, the PaLHC address was Scherich's last known address.[10] Notwithstanding that Scherich continued to be the record property owner (not the actual owner), the Assessment Office sent notice to the proper location.

Although this Court concludes that the Assessment Office properly notified Scherich, and Scherich did not timely appeal as record property owner under Section 8844(b) of the CCAL, he nevertheless had a right to timely appeal from the assessments under Section 8844(c) of the CCAL if he was aggrieved thereby. "We have previously defined an 'aggrieved person' to 'have a direct interest that is adversely affected by the action which he seeks to challenge.'" *In re Appeal of Estate of Achey*, 484 A.2d 874, 878-79 (Pa. Cmwlth. 1984), *aff'd*, 501 A.2d 249 (Pa. 1985) (quoting *Mosside Assocs., Ltd. v. Zoning Hearing Bd.*, 454 A.2d 199 (Pa. Cmwlth. 1982), *disapproved on other grounds by Kincy v. Petro*, 2 A.3d 490 (Pa. 2010)). To maintain standing, a party must continue to be aggrieved by the challenged action. *See, e.g., Bradley v. Zoning Hearing Bd. of the Borough of New Milford*, 63 A.3d 488 (Pa. Cmwlth. 2013). "[J]ust because a party had standing . . . is insufficient to warrant standing to appeal a decision further if the party appealing a determination is no longer aggrieved." *Sunnyside Up Corp. v. City of Lancaster Zoning Hearing Bd.*, 739 A.2d 644, 648 (Pa. Cmwlth. 1999) (quotation marks omitted).

---

[10] Any revested ownership interest Scherich may have had after the Lease's termination on June 12, 2013 did not alter his last known address since Scherich did not notify the Assessment Office that the Lease had been terminated. Thus, the Assessment Office's records continued to reflect that the Tracts were subject to the Lease, with PaLHC responsible for the tax payments.

Importantly, as discussed, *supra*, as a matter of law, Scherich was not the actual owner and it is undisputed that he did not pay the Tracts' taxes. Rather, **PaLHC paid the taxes through 2015** (except the 2015 school taxes).[11] Once PaLHC paid the assessments for the relevant years, and the tax debts were satisfied without impacting Scherich, he was not aggrieved.

Scherich contends that "[t]he payment of taxes was part of the consideration found in the [Lease,]" that the Lease explicitly permits him to appeal from an assessment, and that Scherich bargained for PaLHC to make the tax payments.[12] Scherich Br. at 24. However, Scherich does not describe how, in light of PaLHC's tax payments during the period 2011-2015 (except the 2015 school tax), he was adversely affected in any way by the assessments, or how he continues to be aggrieved, especially where the assessments were lowered for 2016 to the pre-Lease assessment values. Accordingly, because there is no evidence that Scherich's direct interests were adversely affected by the assessments, Scherich was not aggrieved, and he did not have a right to appeal from tax assessments **owed and paid by PaLHC**.[13]

To the extent that Scherich was aggrieved by the 2015 school tax that he paid, he had a right to appeal under Section 8844(c) of the CCAL. This Court has explained:

> Section 8844(c) of the [CCAL] provides that the deadline to file an annual appeal of an assessment shall be September 1

---

[11] PaLHC did not appeal from the assessments and is not a party to this action.

[12] Although the Lease provides that "[b]oth Lessor and Lessee shall have the right in good faith to **contest** any tax or assessment," the Lease does not expressly permit Scherich to seek a refund, especially where he did not pay the assessments. R.R. at 171a (emphasis added).

[13] This Court takes exception with Scherich's contention that he is entitled to a refund of taxes that PaLHC paid. Black's Law Dictionary 1394 (9th ed. 2004) defines "refund" as "[t]he **return** of money **to a person who overpaid**[.]" (Emphasis added.) Scherich did not "overpa[y]." *Id*. In fact, with respect to assessments for the years 2011 through 2015 (excepting the 2015 school taxes) Scherich did not pay **at all**. Scherich is not entitled to a refund for monies he did not pay. Notably, the entity that paid the taxes never filed an objection or appeal and is not a party in this action.

preceding the year on appeal. In other words, [**the challenging taxpayer**] **needed to file its appeal of the assessment** for tax year 2012 by September 1, 2011, **the year preceding the year on appeal.** As statutory deadlines are mandatory, failure to comply with the deadline divests this court of subject matter jurisdiction.

*Morris Rd. Inv'rs, LP v. Montgomery Cty. Bd. of Assessment Appeals* (Pa. Cmwlth. No. 643 C.D. 2012, filed January 3, 2013), slip op. at 4-5 (emphasis added).[14] Thus, with respect to the 2015 school taxes Scherich did pay, he had to appeal no later than September 1, 20**14**. However, Scherich's appeals were filed on August 24, 2015, more than 11 months after the deadline for 2015 assessment appeals.

The law is well-established that "[a]n appeal nunc pro tunc may be allowed where the delay in filing the appeal was caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to the appellant, his or her counsel or a third party." *H.D. v. Pa. Dep't of Pub. Welfare*, 751 A.2d 1216, 1219 (Pa. Cmwlth. 2000). The record reflects that Scherich informed the Assessment Office that PaLHC was, pursuant to the Lease, responsible for paying the taxes, and the Assessment Office marked its files accordingly. Scherich admitted that he did not wonder why he was not receiving tax bills for the Tracts "because when [he] signed the [L]ease, it was stipulated that [PaLHC] was going to take care of the taxes." R.R. at 308a. The County's current chief assessor testified that the Assessment Office annually publishes a notice in the local newspaper stating that the assessment rules are ready and inviting the public to come and review assessment records. *See* R.R. at 247a. Scherich admitted that he was in the Assessment Office on multiple occasions during the relevant period checking on properties that he might be interested in purchasing

---

[14] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Morris Road* is cited herein for its persuasive value.

11

and that he had engaged in the process of looking up parcels, but did not check on the Tracts.

Further, Scherich's own conduct delayed the filing of his 2015 assessment appeals, since he failed to notify the Assessment Office when PaLHC terminated the Lease in 2013. As a direct result, the Assessment Office continued to send assessment notices to the PaLHC address, and PaLHC paid the taxes until 2015, when PaLHC paid the county and township taxes, but forwarded the school tax bill to Scherich for payment. The aforementioned circumstances, solely within Scherich's control, led to Scherich's lack of notice and the delay in the appeal filings. The circumstances are not "extraordinary," there was no "fraud" and no "breakdown in the administrative process." *H.D.*, 751 A.2d at 1219. Scherich's lack of notice falls squarely at his own feet.[15] Accordingly, the trial court properly dismissed Scherich's appeals as untimely.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

[15] Because this Court has concluded that Scherich's appeals were untimely filed, we do not address his spot assessment and improper valuation claims.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eugene W. Scherich,           :
              Appellant     :
                           :
           v.              :
                           :
Greene County Board     :    No. 1878 C.D. 2017
of Assessment            :

## O R D E R

AND NOW, this 7th day of November, 2018, the Greene County Common Pleas Court's November 30, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge